VIVIAN ALLEN et al., by Next Friend, GEORGE HARLOW, v. CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY et al., Appellants.

Division Two, February 26, 1926.

1. **NEGLIGENCE: Matter of Law: Driver of Automobile: Approaching Railroad at Public Crossing: Sounding Whistle: Looking.** In an action by children for the negligent killing of their mother, it cannot be held that her husband was guilty of negligence as a matter of law, where he testifies that he was an experienced driver of an automobile, and his wife knew he was, and gave him no directions as to how he should drive over the railroad tracks at the public crossing in an unincorporated village; that, as he attempted to drive south of the crossing, it was dry and dusty; that the wind came from the southeast, and the dust hung over the tracks and the flat near the depot; that when he got within thirty or forty feet of the track he slowed down, let the engine of the automobile run, stopped, looked and listened, but heard nothing; that when he got down to a post he saw the railroad engine was right on him; that when his wife saw the engine she told him a train was coming; that she tried to unfasten the automobile door and get out, but could not get the door open; that they were then within ten or fifteen feet of the track, and the automobile was traveling five or six miles an hour; that he could not see the engine approaching because the depot, water tank, coal shed, cars, weeds and dust obstructed the view; that no whistle was sounded and no bell was rung, and the engine made no noise as it approached the crossing; and there is further proof that the whistle of the engine was not sounded within 712 feet of the crossing where the accident occurred, and that it was running twenty miles an hour or more and simply coasted to the

Allen v. C. B. & Q. Railroad Co.

crossing. This testimony, being found to be true by the jury, must be accepted as true on appeal, and prohibits a holding that the driver of the automobile was negligent as a matter of law, even if his alleged negligence could be imputed to his wife.

2. ———: **Of Automobile Driver: Imputed to Wife: Common Enterprise.** In an action by children against a railroad company for damages for the negligent killing of their mother when a railroad engine struck the automobile which was being driven by her husband and in which she was riding, his negligence cannot be imputed to her on the theory that they were in a common enterprise, in that he was her agent in conveying her on a visit to and from her father's house, where he owned the automobile and she had no interest in it; she could not drive it and had no control over it; he was an experienced driver of long standing, and had never before met with an accident in driving an automobile, which facts she knew and relied upon him in the management and control of the machine; she was in the front seat, to his right, and held a four-months-old baby in her arms; she was on the lookout for danger, and as she saw the train approaching in close proximity notified him of its approach, and under the excitement of the moment attempted, without success, to open the car door in order to escape the impending collision.

3. ———: **Passenger in Automobile: Highest Degree of Care: Act of 1921.** The Motor Act of 1921, Laws 1921 (Ex. Sess.) p. 91, sec. 19, does not require a passenger in an automobile, owned and driven by her husband, over which she has no control, to exercise the highest degree of care in approaching a railroad crossing; it applies only to "persons owning, operating and controlling" motor vehicles, and in that respect differs from the Act of 1911, Laws 1911, p. 330, sec. 12, par. 9. Such a passenger is required to exercise only ordinary care.

4. ———: **Sounding Whistle: Ringing Bell: Instruction Requiring Both.** An instruction requiring a railroad company to both sound the whistle and ring the bell of the engine, about to cross a public highway, where an automobile is liable to cross, is not error, where the facts show that the enginemen had ample opportunity to sound the whistle as the engine, at a speed of twenty miles an hour, approached the crossing, and the view of the track was obstructed by numerous intervening objects and clouds of dust. The bell-ringing statute (Sec. 9943, R. S. 1919), although it may seem to cast upon the railroad company the duty to either sound the whistle or ring the bell, does not meet the common-law duty, in the increased dangers arising from automobile travel and improved highways, to use all the means at hand,

when the exigencies of the occasion require it, to warn those about to pass over a crossing of the approach of a train.

5. ————: **Railroad Crossing: Approaching Train: Failure to Warn: Negligence of Driver of Automobile and of Deceased Passenger: Humanitarian Rule.** An instruction telling the jury that if defendant's enginemen, as the automobile in which deceased was riding approached the railroad crossing, negligently failed to sound the engine whistle after they saw and had reasonable grounds to believe, or in the exercise of ordinary care could have seen and had reasonable ground to believe, said automobile was in a position of peril, near the tracks, and that the driver and those in the automobile were unaware of the engine's approach, in time, by the exercise of ordinary care, to have given a warning to them, and that the driver could have heard such warning and acted thereon in time to have stopped the automobile and prevented said collision and death of his wife, the verdict must be for the plaintiffs, her children, notwithstanding the driver was negligent in driving the automobile onto said track and his deceased wife was negligent in failing to discover the approach of the train, where there is testimony on which to base it, is not erroneous.

6. ————: **Failure to Warn: By both Whistle and Bell.** In an action for damages based on the failure of the railroad company to give proper warning of the approach of a train as the automobile in which the mother of the plaintiff children was riding attempted to cross the railroad tracks at a public crossing, the court does not err in modifying defendant's requested instruction telling the jury that "the law does not require that defendant's engineer shall both whistle and ring the bell" by adding the words "unless the conditions and surroundings at the crossing and of said engine are such that a person of ordinary prudence would, in the exercise of ordinary care, give both said bell and whistle signals." And if such instruction as requested goes on to say that "if the whistle be sounded eighty rods from the crossing and at intervals until the crossing be passed, or if the bell be rung continuously from a point eighty rods from the crossing until the crossing be passed, the railroad company has complied with the law," the court properly adds thereto the words "unless the conditions and surroundings at the crossing and of said engine are such that a person of ordinary prudence would, in the exercise of ordinary care, give both bell and whistle signals." And having so modified said requested instruction, the court does not err in giving it as thus modified.

Appeal and Error, 4 C. J., Section 2719, p. 773, n. 2. Evidence, 23 C. J., Section 1972, p. 151, n. 63; p. 1992, n. 166, n. 58. Negligence, 29 Cyc., p. 549, n. 50, 54; p. 550, n. 59. Railroads, 33 Cyc., p. 959, n. 49; p. 968, n. 8; p. 1015, n. 62, 63; p. 1016, n. 64, 66; p. 1017, n. 72; p. 1104, n. 32; p. 1108, n. 55, 56; p. 1121, n. 18; p. 1122, n. 23; p. 1137, n. 23.

Appeal from Caldwell Circuit Court.—*Hon. Arch B. Davis*, Judge.

AFFIRMED.

*H. J. Nelson, J. C. Carr, L. W. Reed, O. J. Adams* and *J. G. Trimble* for appellants.

(1) The peremptory instructions in the nature of demurrers to all the evidence should have been given. (a) The driver of the auto was negligent as a matter of law. Monroe v. Railroad, 297 Mo. 646; Evans v. Railroad, 289 Mo. 493; Tannehill v. Railroad, 279 Mo. 158; Burge v. Railroad, 244 Mo. 76; Lyter v. Hines, 224 S. W. 841; Kelsay v. Railroad, 129 Mo. 372; Hayden v. Railroad, 124 Mo. 573. The driver "gambled with death." Bradley v. Railroad, 288 Fed. 484. The statement of the driver that when he slowed up and stopped thirty to forty feet from the track, he looked in the direction of the approaching engine and saw nothing, must be disregarded and treated as absolutely untrue. The uncontradicted evidence shows he could have seen, and did see if he so looked. When a witness contradicts physical facts, the court will reject his testimony. (b) The driver's negligence was the proximate cause of the accident. The auto lunged forward in an effort to beat the train as shown by the uncontradicted testimony of the fireman and Harlow, and the act of the eight-year-old child on the back seat in jumping out. (c) The driver's negligence is imputable to the deceased, because they were on a common enterprise. The driver was her agent to convey her to and from her foster father's house. Tannehill v. Railroad, 279 Mo. 158; Rose v. Wells, 266 S. W. 1016; Railway v. LeBarr, 265 Fed. 129; Delaware v. Boyden, 269 Fed. 881; Davis v. Ry., 159 Fed. 18. (d) The deceased was guilty of negligence barring a recovery. What the child saw and Harlow saw she could have seen if she had been performing her duty to look. Monroe v. Railroad, 297 Mo. 652; Noble v. Ry., 298 Fed. 381; Leapard v. Rys., 214 S.

W. 268; Fechley v. Ry., 119 Mo. App. 365. Deceased had a better opportunity than either the child or the driver to see the engine. Noble v. Ry., 298 Fed. 381. It was the duty of the deceased to look. Her husband testified she did look when he stopped thirty to forty feet from the track. It must be conclusively presumed she saw the engine at that time. Without protest, until too late to hope protest would be effective, she permitted her husband to go forward in an attempt to beat the train. That negligence precludes a recovery. So. Ry. v. Priester, 289 Fed. 945; Brown v. McAdoo, 188 N. W. 7; Brommer v. Railroad, 179 Fed. 577; Hall v. West Jersey, etc., 244 Fed. 104; Erie v. Hurlburt, 221 Fed. 907. (2) The court committed many fatal errors in giving and refusing instructions. (a) That the law cast upon deceased some duty to take precautions for her own safety as the auto approached the railroad track, is admitted by plaintiffs by the inclusion in their given instructions Numbered 1, 2 and 3 of the clause "and that at and just prior to the time of said collision, the said Mabel Allen was in the exercise of ordinary care;" but said three instructions are in error in merely charging her with the duty to exercise ordinary care. Wands v. Railroad, 106 Mo. App. 96; Underwood v. Railroad, 182 Mo. App. 262; Lyter v. Hines, 205 Mo. App. 438. At the time of this accident, the statute required the driver of a motor vehicle to "exercise the highest degree of care" in driving on a public highway. Laws 1921 (Ex. Sess.) p. 91, sec. 19. The statutory duty of the driver of the auto in this case was exactly the same as it was under the first motor vehicle statute, Laws 1911. Monroe v. Railroad, 297 Mo. 653. (b) Instruction 3, asked by and given for plaintiffs, was erroneous in that it permitted the jury to find that both the bell and the whistle on the locomotive should have been sounded for the crossing, contrary to the statute which only casts upon the defendant the duty to sound either the bell or the whistle, but not requiring both. The court had no power to change the law as declared by statute, and no

power to authorize the jury to do so. Defendant attempted to cure this error by asking its Instruction G, which was refused by the court. Sec. 9943, R. S. 1919; Terry v. Ry. Co., 89 Mo. 587; Kenney v. Ry. Co., 105 Mo. 270, 287; Rollison v. Ry., 252 Mo. 525. The rule that a jury may be allowed to pass on question of whether both bell and whistle statutory signals should have been given, relates only to humane doctrine and instructions thereunder, whereas plaintiffs' Instruction 3, is not a humane doctrine instruction and plaintiffs' only humane doctrine instruction (No. 4) makes no reference to bell. Rollison v. Railroad, 252 Mo. 537; Koontz v. Wabash, 253 S. W. 413.

*Pross T. Cross, Davis & Ashby* and *Gerald Cross* for respondents.

(1) The demurrers were properly refused. The driver of the auto was not negligent as a matter of law. (2) The driver's negligence, if he was negligent, was not the proximate cause of the accident, but was a proximate cause; and the negligence of defendant in failing to ring the bell or sound the whistle, in approaching the crossing, was also "a proximate cause of the accident;" its negligence in failing to give a warning signal or to slacken speed after it saw or could have seen deceased's danger, was also a proximate cause of the death of deceased. And it is no defense to say that others were also guilty of negligence, but each person whose negligence contributed to cause the injury may be held to account to the injured person, and may be sued either jointly or severally. Rogers v. Rogers, 177 S. W. 382; Dunly v. Buffum, 173 Mo. 1; Funk v. Kansas City, 208 S. W. 840; Asher v. City of Ind., 177 Mo. App. 1; Reynolds v. Railway, 180 Mo. App. 138. (3) The negligence, if any, of the husband, cannot be imputed to the wife. And he was not her agent, and they were not engaged in a common enterprise. Corn v. Railway, 228 S. W. 78; Jepson v. Transit Co., 243

S. W. 370; Stotler v. Railroad, 204 Mo. 628; Rappaport v. Roberts, 203 S. W. 676; Rowe v. Railway, 247 S. W. 443; Wren v. Transit Co., 241 S. W. 464; Friedman v. Railway, 238 S. W. 1074; Zeigler v. Railway, 220 S. W. 1016; Boyd v. Kansas City, 237 S. W. 1001; Simpson v. Wells, 237 S. W. 520; Burton v. Pryor, 198 S. W. 1117; Newton v. Harvey, 202 S. W. 249; Lawler v. Montgomery, 217 S. W. 856; Moon v. Transit Co., 237 Mo. 435. (4) The degree of care which the law imposed upon and exacted of the deceased as a passenger in her husband's auto, was that of ordinary care. Corn v. Railway, 228 S. W. 78; Dincler v. Railway, 265 S. W. 113. (5) Even if there were no evidence to the effect that the deceased warned the driver of the approaching engine and of her attempt to escape, yet, the law would presume that she did these things, since, she being dead, the law will infer she exercised ordinary care. Hutchinson v. Safety Gate Co., 247 Mo. 71; Tibbles v. Railway, 219 S. W. 109; McKerall v. Railway, 257 S. W. 166; Collins v. Mill Co., 143 Mo. App. 333; Grant v. Railroad, 190 S. W. 586; Berry on Automobiles (4 Ed.) sec. 560. (6) The failure to either ring the bell continuously within eighty rods of the crossing, or to sound the whistle at intervals until it was passed, rendered defendants guilty of negligence *per se;* and the law presumes that such negligence was a proximate cause of the collision, and the burden is cast on defendant to overcome this presumption. Sec. 9943, R. S. 1919; Persinger v. Ry., 82 Mo. 196; Taylor v. Railway, 83 Mo. 386; Bogie v. Nolan, 96 Mo. 290; Crumpley v. Railroad, 98 Mo. 34; Kenney v. Ry. Co., 105 Mo. 270; Lamb v. Mo. Pac. Ry. Co., 147 Mo. 171; Rippee v. Railroad, 154 Mo. 358; Green v. Mo. Pac. Ry. Co., 192 Mo. 131; Stotler v. Railroad, 200 Mo. 107; McNulty v. Railway, 203 Mo. 475. (7) It is well-established law that statutory signals are the minimum that must be done, and not the maximum. And the statute does not absolve the defendant from the exercise of common-law "ordinary care." It was never intended to relax, but rather to strengthen, the

vigils of the common law to prevent injury to others.
Lloyd v. Railway, 128 Mo. 595; Rollison v. Railroad, 252
Mo. 525; Fife v. Railroad, 174 Mo. App. 661; Wilkerson v.
Railway, 146 Mo. App. 711. (8)  It is as much the duty
of those operating an engine to warn the traveler, by
timely and proper signals, when in the exercise of or-
dinary care they can do so, as it is their duty to stop or
check speed.  And although a train cannot be stopped or
the speed checked in time, after the discovery of the
traveler's peril, to avoid injury thereby, yet the defendant
will be liable if the injury could have been prevented by
use of a warning signal.  Logan v. Railway, 254 S. W. 705;
State ex rel. Wabash v. Trimble, 260 S. W. 1000; Ross v.
Davies, 228 S. W. 508; Wolf v. Railway, 251 S. W. 441.
The engineer's own testimony conclusively shows that he
was guilty of the grossest negligence in failing to give a
warning signal, after he well knew that there was danger
lurking on the crossing.

RAILEY, C.—This action was commenced in the Cir-
cuit Court of Caldwell County, Missouri, by George Har-
low, who was duly appointed and qualified as the next
friend of the minors hereafter mentioned, whose names
and ages are as follows:  Vivian Allen of the age of
twelve years, Ruth Allen of the age of ten years, Helen
Allen of the age of nine years, Velma F. Allen of the age
of five years, and Elizabeth Allen, less than one year of
age, for the purpose of prosecuting this action for a pen-
alty of $10,000 under the provisions of Section 4217, Re-
vised Statutes 1919, by reason of defendants' alleged
wrongful acts in killing their mother, Mabel Allen, on
August 20, 1922, at a public crossing of the track of the
C. B. & Q. Railroad, at the unincorporated village of Net-
tleton, in Caldwell County aforesaid.

The father of the above children, Harry Allen, did
not exercise his right to sue within six months from the
date of his wife's death and, hence, the action was brought
by said next friend for the benefit of said minors.

The defendant, Thomas P. Bird, was the engineer in charge of the engine and tender at the time Mrs. Allen was killed, and is made a party to this action.

The petition, after charging defendants' knowledge of the conditions which existed at the scene of the accident, alleges that, on August 20, 1922, said Mabel Allen was riding in an automobile—owned and controlled by another —over and along said public road and at said crossing; that she was traveling south over said crossing, when defendant Bird, as engineer of defendant, negligently operated a locomotive passing east over said crossing, at a dangerous and unsafe rate of speed, without ringing the bell thereon as required by law; and negligently failed to sound the whistle of said locomotive at intervals as required by law; and failed to give said Mabel Allen any notice or warning whatever of the approach of said engine at said crossing; and that they negligently ran and operated said engine at the time and place aforesaid in a noiseless manner, going down grade with simply the tender attached.

It is alleged that the view of travelers from the north approaching said crossing was partially obstructed, and which was well known to defendants; that by reason of the foregoing, and the failure to give said signals or any warning, while approaching said crossing at the dangerous and unsafe rate of speed aforesaid, the locomotive, without the fault of said Mabel Allen, collided with the automobile in which she was riding, with great violence and causing her death; that at said time she held in her arms her four-months-old child, and by reason of the negligent acts aforesaid was placed in a position of great and unexpected peril.

It is further alleged that while said Mabel Allen was in peril as aforesaid, the defendants, while operating said locomotive, saw, or in the exercise of ordinary care could have seen, her in such peril, and oblivious of the approach of said locomotive, in time to have stopped said engine, or slacken the speed thereof, or ring the bell, or sound the

whistle, or otherwise warn her and the others in said automobile, of the approach of said engine; that defendants negligently failed to ring said bell or sound the whistle, or to give any other warning of the approach of said engine over said crossing, while the same was approaching at a high and dangerous rate of speed; that by reason of the foregoing acts of defendants' negligence, said Mabel Allen was killed as aforesaid, etc.

The defendant company admitted its incorporation, and denied every other allegation in the petition. It specifically denied that the death of said Mabel Allen was due to the negligence of either of the defendants herein, but avers that her death was caused solely by the negligence and carelessness of said Mabel Allen, Harry Allen and the plaintiff, Vivian Allen, in failing to exercise that degree of care and caution which it was their duty to exercise under the law in using their senses of sight and hearing, whereby they could have learned of the approach of said engine, while the automobile was at a place of safety, and at a sufficient distance from the track; that said automobile, by care and caution could have been stopped at a place of safety before coming in collision with said engine on the crossing aforesaid; that those in the automobile were guilty of negligence in failing to give the driver of same timely notice of the approach of said engine, after they saw or knew it was coming, and while they were in a position to stop in safety before coming in collision with said engine on the crossing, etc.

The separate answer of defendant Bird pleads a general denial, and contributory negligence upon the part of the driver of the automobile and deceased.

We gather from the abstract of record, exhibits and briefs of counsel, that there is but little, if any, substantial controversy over the following general facts: It appears from the evidence that there are five tracks at the station of Nettleton. These tracks, as described by the witnesses, run substantially east and west through the village of Nettleton. The track on the extreme south

serves the stock pens, and is called the stock track. Immediately north of the above, is a long side track, called the south passing track. North of the south passing track is the main track. North of the latter is a long side track, called the north passing track. North of the latter, there is a short track called the "water" or "sump" track. The stock track connects only with the south passing track. The latter connects with the main track east of the crossing where the accident occurred, and again some distance west of the depot. The north passing track connects with the main track east of the crossing where the accident occurred and again west of the depot. The frog of the north passing track is nineteen feet west of the center of the crossing where the accident occurred. The water track connects with the north passing track only. The east switch for the water track was one hundred twenty-eight feet west of the center of the crossing. For some distance west of the depot to a point of a little east of where the accident occurred, the road is on a descending grade of nine-tenths of a foot in 1,000 feet. The grade grows a little steeper east of the crossing. West of the depot the track is straight, but one hundred feet east of the center of the depot the track begins in a one degree curve to the right. Between the main track and the north passing track are a number of buildings, and two small buildings west of the depot. East of the depot are a tool house, fourteen feet east and west by twelve feet north and south, a water tank, twenty-three feet in diameter, set on posts, a pump house seventeen feet east and west by ten feet north and south. The pump house and coal bin are east of the water tank. They are low buildings and a fireman can see over the top of same when on his seat in the engine cab. The coal bin is about four hundred feet west of the crossing where the accident occurred. There were no buildings between the coal bin and crossing. North of the north passing track the water track was located. The ground north of the railroad sloped to the south to a low place about north of the water tank. The

railroad company dug in this low place what is called a "sump," two hundred feet long east and west by eleven feet wide. In times of drought this was filled with water which was pumped into the water tank. The "sump" was surrounded by a low fence. The east switch of the water track was one hundred twenty-eight feet, the frog two hundred feet, and the point where a car on the water track would clear a car on the passing track, two hundred eighty-five feet, west of the center of the crossing. The point of clearance for a car on the north passing track and a car on the main track was one hundred fourteen feet west of the crossing. There were three crossings of public highways in the vicinity of Nettleton. Going east, the first crossing was west of the depot, 1492 feet from the place of accident. The second crossing was just east of the depot. The distance from where the accident occurred, west to the second crossing near the depot, was seven hundred twelve feet. The east end of the depot building was fifteen feet from the west line of said second crossing. The third crossing was where the accident occurred. The house of George Harlow, where the occupants of the automobile had been visiting, was on the north and west side of the highway where the accident occurred. The house fronted east and was about two hundred twenty-five feet from the railroad. The accident occurred about six o'clock P. M. South of the railroad the Ocean-to-Ocean Highway ran east and west, five hundred fifty feet south of said crossing, and it, as well as the road where the accident occurred, was extensively used by the public.

Keeping in mind these general facts, with the view of considering defendants' demurrer to the evidence at the conclusion of the case, we will set out in a general way the main facts relied on by respondent, in order to determine whether plaintiff offered substantial evidence at the trial tending to support the verdict of the jury.

It is undisputed that on August 20, 1922, defendant, Thomas Bird, was a locomotive engineer in the service of

the Chicago, Burlington & Quincy Railroad Company and that, as such, he was in charge of and operating an engine and tender, without any cars attached thereto, traveling east, through the unincorporated town or village of Nettleton in Caldwell County, Missouri, in company with G. G. Taylor, who was likewise in the service of said railroad company in the capacity of fireman on said locomotive; that the engineer was at his place on the south side of said engine and the fireman occupied the opposite side of same; that on the above date, at about six o'clock P. M., the engineer and fireman left the depot at Nettleton, in charge of said engine and tender, traveling east at a rate of speed of twenty miles or more per hour; that from the time said engine left the crossing seven hundred twelve feet west of the crossing where the accident occurred, the engine bell was not rung, nor was the whistle of said locomotive blown; that on the above date before the accident, Harry Allen and Mabel Allen, with their five minor children, between the ages of four months and thirteen years of age, in a Ford automobile, had been visiting Mr. Allen's sister; that Mabel Allen—the wife— on their return home to Hamilton in said county, desired to stop and visit Mr. George Harlow and wife, who were the foster father and mother of Mrs. Allen. As heretofore stated, the Harlow house was about two hundred twenty-five feet north of the crossing where the accident occurred. After visiting with the Harlow family for about one hour, the father, mother and four children came out of the house, got into the Allen automobile and started south toward the track, where Mrs. Allen was killed.

Harry Allen was an experienced driver of automobiles, and was familiar with said crossing. He testified that his wife had no interest in the automobile, had no control over same, and had nothng to do with the driving of same at that time; that she had never driven an automobile, and knew nothing whatever about driving one; that his wife knew he was an experienced driver of

such machines, and that he had never had any accidents; that his wife on the above occasion gave him no directions as to how he should drive said machine; that they were going south when the car was struck; that it was dry and dusty with wind blowing from the southeast; that the dust went northwest and hung across that flat near the depot so that "you couldn't see through up there;" that he drove on down toward the crossing, and that when he got probably thirty or forty feet from the track, he slowed down, listened, left his engine running and didn't hear anything; that he stopped, looked and listened; that when he got down to a post, he saw the engine was right on him; that when his wife saw the train, she told him a train was coming and to stop; that she tried to unfasten the car door and get out, but could not get the door open; that she was holding her four-months-old baby in her lap; that they were within ten or fifteen feet of the track while she was trying to open the car door; that his machine was traveling five or six miles per hour as they approached the crossing; that he practically came to a stop within thirty or forty feet from the crossing, and looked in both directions; that he could not see the engine approaching because of obstructions, the depot, water tank, coal shed, cars, weeds and the dust; that it was one hundred eighteen feet from the crossing to the end of the cars stationed on the track; that no whistle was sounded, nor did any bell on the locomotive ring; that the engine made no noise as it approached the crossing.

Defendant Bird testified that when about two hundred feet from the crossing where the accident occurred, the fireman halloed that there was danger ahead, and that he applied the brakes in emergency; that it would take the brakes about one second to take hold; that it would only take about one-half second to apply the brakes; that he never sounded the whistle while traveling the two hundred feet toward the crossing; that he never sounded the whistle at any time within seven hundred twelve feet of the crossing where the accident occurred; that it was the

rule and custom of the fireman to notify the engineer of danger ahead; that the whistling apparatus was right above the engineer's head; that he understood from what the fireman said that there was danger ahead, and he applied the brakes; that he never sounded the whistle after he put the brakes in emergency; that the whistle is placed there as a warning of danger; that the engine was equipped with a good whistle, and he could have grabbed the latter after putting the brakes on in emergency; that when the fireman gave him the danger signal he knew he was too close to the crossing to stop; that his engine ran about three hundred fifty feet after he applied the brakes; that his engine was running about twenty miles per hour and simply coasting toward the crossing; that from the time the brakes were put in emergency, after danger signal of fireman, which took from one-half to one second, the engine coasted to the crossing about two hundred feet distant, without any whistle being sounded.

Other testimony was produced by plaintiffs in corroboration of many of foregoing facts, in the way of maps, oral testimony, etc.

The evidence on behalf of defendants tended to contradict all the material testimony offered by plaintiffs. In short, defendants offered in evidence numerous photographs, showing the surroundings at the crossing and in vicinity of same. The defendants likewise offered in evidence, maps, blue-prints and substantial testimony tending to show that plaintiffs were not entitled to maintain this action.

The instructions, rulings of the court and such other matters as may be deemed important, will be considered in the opinion.

The jury returned a verdict in favor of plaintiffs for $10,000. Judgment was entered for said amount, and thereafter motions for a new trial and in arrest of judgment were filed and overruled. An appeal was granted defendants to this court.

I.   It is claimed that Harry Allen, the driver of the automobile, was negligent as a matter of law. A portion of his testimony, in connection with other evidence on behalf of plaintiffs, is heretofore set out.  In appellants' original brief it is correctly stated that: "There was much testimony that whistle was sounded and that it was not sounded; that the bell was ringing and that it was not ringing; that the engine did make and did not make noise in running. There was also some conflict in the testimony as to whether there were or were not obstructions to view by reason of dust, high banks, weeds and box cars."

Negligence: Matter of Law.

Taking the testimony offered by plaintiffs to be true, as we should do in passing on this issue as one of law, the court committed no error in permitting the jury to pass upon the alleged negligence of the driver as a disputed question of fact.  Aside from the foregoing, unless the alleged negligence of the driver can be imputed to his wife, it constitutes no defense in this case.

II.   Appellants contend that:  "The driver's negligence is imputable to the deceased because they were on a common enterprise.  The driver was her agent to convey her to and from her foster father's house."

Imputed Negligence.

The above contention does not appeal to us as being sound, when applied to the facts of this case.  The driver owned the automobile, and the wife had no interest therein.  She could not drive the machine and had no control over same.  Her husband was an experienced driver of long standing, who had never met with an accident in driving one, which was known to the wife, and she relied on him in the management and control of the machine. She was on the front seat, to the right of the driver, with a four-months-old babe in her arms, was on the lookout for danger and, as she saw the train approaching in close proximity, notified her husband of its approach, directed him to stop and, under the excitement of the moment, at-

tempted, without success, to open the car door in order to escape from impending danger. Under the foregoing circumstances, the alleged negligence of the husband could not, as a matter of law, be imputed to the wife. [Rawie v. C. B. & Q. Railroad Co., 274 S. W. 1. c. 1035; Treadway v. United Rys. Co., 300 Mo. 1. c. 173, 253 S. W. 1. c. 1041; Boyd v. Kansas City, 291 Mo. 1. c. 646, 237 S. W. 1. c. 1008; Simpson v. Wells, 292 Mo. 301, 237 S. W. 520; Mahany v. K. C. Rys. Co., 286 Mo. 1. c. 610, 228 S. W. 822, and cases cited; Corn v. Ry. Co., 228 S. W. 1. c. 82; Moon v. St. Louis Transit Co., 237 Mo. 1. c. 434; Neff v. City of Cameron, 213 Mo. 1. c. 359; Stotler v. Railroad, 200 Mo. 1. c. 147; Petersen v. Transit Co., 199 Mo. 1. c. 341; Sluder v. Transit Co., 189 Mo. 1. c. 139; Becke v. Mo. Pac. Ry. Co., 102 Mo. 544.] Numerous decisions of the Courts of Appeals may be found following the above authorities.

III. The evidence in the case is insufficient to convict deceased of negligence as a matter of law. The question as to whether she was exercising or-

**Negligence of Deceased.** dinary care before, and at the time of the collision, was one of fact for the determination of the jury. It is contended by appellant that Section 19, Laws 1921 (Extra Sess.) page 91, is, in legal effect, the same as paragraph 9 of Section 12, Laws 1911, pages 330-1, relating to the degree of care to be used in operating automobiles; and that deceased failed to meet the requirement of said law.

This contention is well disposed of by the unanimous decision of the other Division in Corn v. Ry. Co., 228 S. W. 1. c. 82, where SMALL, C., speaking for the court, said: "Plaintiff's instructions Numbered 3 and 4 were not objectionable, because they did not require her to exercise the highest degree of care. The Motor Act of 1911 in this respect does not apply to plaintiff, but only to 'persons owning, operating, or controlling' machines."

The foregoing contention is without merit and overruled.

IV.   Appellants criticise plaintiffs' instructions numbered 1, 2 and 3, and charge the court with error in giving same, for the alleged reason that Harry Allen, the driver of the machine, was guilty of negligence in handling said machine; and that his negligence barred a recovery for the death of his wife.  What we have previously said, disposes of this assignment of error adversely to appellants' contention.  All three of the above instructions required the jury to find that deceased was in the exercise of ordinary care before a verdict could legally be returned in favor of respondents.

Instructions.

The above assignment of error is accordingly overruled.

V.   Appellants challenge the correctness of Instruction 3, for the alleged reason that it permitted the jury to find that both the bell and the whistle should have been sounded for the crossing, when Section 9943, Revised Statutes 1919, known as the bell-ringing statute, simply cast upon defendant the duty to sound either the bell or whistle, but does not require the sounding of both.

Sounding Whistle: Ringing Bell.

In order to consider this question intelligently, in connection with the facts as disclosed by the record, we here set out said Instruction Three, which reads as follows:

"The court instructs the jury that if they find and believe from the evidence that on the 20th day of August, 1922, defendant railroad company's locomotive engine struck and collided with the automobile in which Mabel Allen was riding at a place where its track crosses a traveled public road, and that the conditions and surroundings as shown by the evidence at said crossing and of said locomotive as they were, or by the exercise of ordinary care should have been, apparent to the engineer in charge of the engine were such that a person of ordinary prudence and caution, acting under the same circumstances and conditions, would have rung the bell con-

tinuously while approaching and passing over said crossing and also given the whistle signal at intervals while approaching and passing over said crossing, then under the law, the failure, if any, of said engineer to so make and give both said bell and whistle signals, if he did, while approaching and passing over said crossing, constitutes negligence; and you are instructed that if in this case you find that the defendant Bird was the engineer on the locomotive engine that collided with said auto at said crossing, and as said engine approached near to and went upon said public road crossing he failed to give the said bell signal continuously as aforesaid, and to sound said whistle at intervals, until said crossing was passed, and that his failure, if any, so to do at that time and place constituted negligence as above defined in this instruction, and if you find that such negligence, if any, on the part of said engineer, the defendant Bird, was a direct and proximate cause of the collision of said locomotive engine with the automobile in which Mabel Allen was so riding, and of her injury and death, and if you find from the evidence that at and just before said collision the said Mabel Allen was in the exercise of ordinary care, and that plaintiffs are the sole and only minor children, either natural born or adopted, of said Mabel Allen and surviving her at the time of her death, and that this suit was brought more than six months after and within one year of the time of her said death, and that the husband of said Mabel Allen did not within six months after her death file or bring any suit or make any claim for or on account of her said death—then if you so find the facts to be, under the law, defendants are both liable to plaintiffs in this action, and if you so find the facts to be, your verdict will be for plaintiffs and against both defendants, even though you may further find that the driver of said automobile was also guilty of negligence in driving onto said track and in the path of said locomotive.''

It will be perceived from reading this instruction, that it was not dealing with the requirements of said

statute, but in respect to a duty which arose under the peculiar facts presented by the situation. The above statute became the law in the early history of the State, and under ordinary circumstances was deemed adequate to protect the public from danger in using these crossings. We cannot shut our eyes to the fact that new and dangerous conditions have arisen in the extended use of motor vehicles, which now make these crossings, both in the cities and country, extremely dangerous, as shown by the appalling death toll recorded in the metropolitan press of our land. We should likewise take judicial notice that under the improved conditions of our highways the motor-vehicle travel will continue to be extended, and that the lives of many helpless women and children will be constantly at stake in passing over these highway crossings. Is it therefore unreasonabe to require at the hands of the railway, without additional expense, and little trouble, when the exigences of the occasion require it, that its engineer shall use all the means at hand, to warn those about to pass over the crossings of the approach of the train, in order that travelers may stop in a place of safety?

Were the facts in this case sufficient to warrant the court in giving said instruction? The engineer testified that when about two hundred feet from the crossing where the accident occurred, he received a danger signal from the fireman, which he construed to mean danger of some kind at said crossing. He did not see the automobile approaching before it got to the track, but knew when the fireman halloed "danger" that he was too close to the crossing to stop, and immediately he set the brakes, which took him but a second. He said his engine was coasting toward the crossing at about twenty miles per hour, which would mean that he was practically traveling thirty feet per second. After receiving the danger signal from the fireman, and after occupying one second of time in setting the brakes, he still had five seconds in which he could have sounded the whistle, and yet ran the entire two hundred feet without using it. This is not a case where the

engineer sees the automobile approaching the crossing, and has good reason to believe that the driver will stop before going into collision, but a case is presented where the engineer is warned that he may encounter some one on, or approaching, the crossing which required him to use the whistle in order that the traveler might stop at a place of safety until the engine passed.

In Hinzeman v. Railroad, 199 Mo. 1. c. 65, LAMM, J., in clear and forceful language, speaking for our court en banc, said: "The whistle was there, in going order, and could be blown instantly. The blowing of a locomotive whistle is the ordinary and usual means of giving a sharp alarm, the steam was there to blow it, the lever was there to operate it, and the man was there to pull the lever and open the throttle. Is it an unreasonable and unfair requirement, then, as matter of law, if it be held that the whistle should be used if possible, when life is at stake? We think not. The monotonous stroke of a bell may be one thing; the incisive, ear-splitting scream of a whistle, a signal known to man and beast as performing the office of an 'alarm signal,' is another."

In the above case the accident occurred in the East Bottoms outside of Kansas City, and not at a public or private crossing. Hinzeman was the section foreman of defendant. There was abundant evidence indicating that the bell was ringing when the accident occurred. The plaintiff asked but one principal instruction, based on the hypothesis that it was the duty of defendant to warn Hinzeman by an alarm of the whistle. The case had been here before and was elaborately briefed and argued on both sides. The ruling of the trial court was affirmed.

If it was necessary that a whistle should be sounded as a common-law duty under the facts in the Hinzeman case, why should not the same principle apply with greater force to the facts before us, when thousands of people are now using these crossings daily and need all the warning of danger which the railroad employees can give, by the use of the whistle, and especially in a case like the one

at bar, where the engineer was given a danger signal and, without knowing who or what he was to encounter, coasted to a collision without the slightest effort to use the whistle which would have taken but a second of time? The principle of law announced by Judge LAMM, supra, is fully sustained by other decisions of this court, among which are: Hinzeman v. Railroad, 182 Mo. 1. c. 625-6; Dutcher v. Railroad, 241 Mo. 1. c. 160-1; Rollison v. Railroad, 252 Mo. 1. c. 538.

Instruction 3, on the facts before us, properly declared the law. The defendants are in no position to contend as a matter of law, that Mabel Allen might not have profited by the use of the whistle if it had been blown. Where signals of this character are required by law to be given, it is negligence to omit them, and the question of liability by reason of said negligence is one for the jury, under appropriate instructions. The above assignment of error is accordingly overruled.

VI. Instuction numbered 4, given at the instance of plaintiffs, is complained of by appellants. It reads as follows:

"The court instructs the jury that if they find and believe from the evidence that the plaintiffs herein are all infants under the age of twenty-one years, and that George Harlow has been duly and regularly appointed and qualified as next friend for said infant plaintiffs for the purpose of bringing and prosecuting this suit; and that the plaintiffs herein are, and were, the sole and only minor children, either natural born or adopted, of said Mabel Allen, and surviving her at the time of her death on the 20th day of August, 1922; and that for a period of six months next after her said death her husband, Harry Allen, did not bring or institute any suit or proceedings or attempt in any manner to collect or obtain damages in his own name and behalf, for and on account of the death of his said wife, Mabel Allen; and that this action was brought more than six months

Failure to Warn.

after the death of the said Mabel Allen, and within one year from the date of her said death;

"And if you further find from the evidence that, as the automobile in which Mabel Allen was riding at the time she was killed, approached near, and went upon, defendant railroad company's tracks, the defendant railroad company's servants and agents on and in charge of said locomotive engine negligently failed to sound the whistle after they saw, or had reasonable cause to believe—or in the exercise of ordinary care could have seen and had reasonable cause to believe—said automobile was in a position of peril, on or near said tracks, and that the driver of, and those in said auto, were unaware of the approach of said locomotive engine at said crossing, in time, by the exercise of ordinary care, to have given a warning to the persons in said auto, of the approach of said engine by sounding the whistle, and that the driver of said auto, by use of ordinary care, could have heard such warning and acted thereon, in time to have stopped said auto and thereby have prevented said collision and death of said Mabel Allen, but that said servants and agents so on said engine, neglected and failed to so sound said whistle, then if you so find the facts to be, your verdict will be for the plaintiffs and against defendant railroad company.

"And this is so notwithstanding you may also find that the driver of said car was also guilty of negligence in driving said auto onto said track and in the path of said approaching train, and that said Mabel Allen was also negligent in failing to discover the approach of said train."

What we have said in the preceding paragraph, applies with equal force to above instruction. We are of the opinion that the court committed no error in giving same. [Hinzeman v. Railroad, 199 Mo. 56.]

VII. The defendants asked the court to give Instruction G, which was modified by the court, and given as follows:

"The law does not require that the defendant's engineer shall both whistle and ring the bell *unless the conditions and surroundings at the crossing and of said engine are such that a person of ordinary prudence would, in the exercise of ordinary care, give both said bell and whistle signals.* If the whistle be sounded eighty

**Whistle and Bell.**
rods from the crossing and at intervals until the crossing be passed, or if the bell be rung continuously from a point eighty rods from the crossing until the crossing be passed, the railroad company has complied with the law, *unless the conditions and surroundings at the crossing and of said engine are such that a person of ordinary prudence would in the exercise of ordinary care give both bell and whistle signals.*" (Italics ours.)

The italicised portion of said instruction indicates, the modifications made by the court. The conclusions heretofore reached, are in accord with the ruling of the trial court in refusing said instruction as asked, and giving the same as modified.

VIII.   Other matters are discussed in the briefs of counsel, which we have examined and considered, but we do not find anything therein which would warrant us in reversing and remanding the cause.

We have carefully read the 850-page record, and reached the conclusion that the court tried the case with the utmost fairness and with marked ability. The counsel upon both sides seemed to have vied with each other in making it unpleasant in some respects for the court, but we find nothing in the record which indicates that both parties were not treated with the greatest fairness and consideration.

Without extending the opinion further, we hold that the demurrers to the evidence interposed at the conclusion of the case were properly overruled; that no error was committed by the court of which defendants can legally complain; that the verdict of the jury was based upon substantial evidence and returned after a fair and impartial

trial. The judgment below is accordingly affirmed. *Higbee, C.,* concurs.

PER CURIAM:—The foregoing opinion of RAILEY, C., is adopted as the opinion of the court. All of the judges concur.