FERNANDO GARCÍA, Plaintiff and Appellee, *v.* THE AMERICAN RAILROAD COMPANY OF PUERTO RICO, Defendant and Appellant. ROSA FELIÚ DE RODRÍGUEZ, Plaintiff and Appellee, *v.* THE SAME, Defendant and Appellant. PEDRO MERCADO, Plaintiff and Appellee, *v.* THE SAME, Defendant and Appellant. FRANCISCO OLMEDA, Plaintiff and Appellee, *v.* THE SAME, Defendant and Appellant.

No. 5451. Argued November 15, 1932.—Decided November 28, 1933.

M. *Acosta Velarde* for appellant. *O. Souffront* and *M. Ramírez Baigés* for appellees.

Mr. Justice Córdova Dávila delivered the opinion of the Court.

The American Railroad Company of Puerto Rico, defendant herein, operates a railroad which crosses the Island from north to south and connects, among others, the towns of Lajas and Yauco; and at a distance of about one kilometer from the town of Lajas lies a road which is designated by the plaintiffs as a public highway and by the defendant as a private road. At the intersection there is a grade crossing.

On October 29, 1928, between half past 3 and 4 o'clock in the afternoon, a train of the defendant company collided with a "Graham" motor truck. The latter belonged to Fernando García and at the time of the accident four persons were traveling in it: the driver Francisco Olmeda, Ernesto Rodríguez, Pedro Mercado, and Carlos Seda. Ernesto Rodríguez was killed in the accident. Pedro Mercado and Olmeda were injured and the truck was almost totally destroyed. Four suits were brought against the American Railroad Co., and the district court rendered judgment in favor of the plaintiff in each case.

It is urged in the first place that the court erred in denying a motion to strike out filed by the appellant against the amended complaints. We consider as unimportant this assignment of error, which moreover is ridiculous. The lower court refused to strike out conclusions of law based on the facts alleged in the complaint, and the error, if any, did not cause any prejudice.

The second, third, and fourth assignments relate to the negligence charged against the defendant for its failure to maintain chains or gates at the place where the accident occurred and an employee to signal the coming of trains to the persons going upon the crossing. Said assignments, which we will consider jointly, are as follows:

"Error 2. The judgment of the court against defendant on the ground that the place of the accident is one where an insular public road crosses the tracks deprives defendant of its property without due process of law and without due compensation, in violation of section 2 of the Organic Act of Puerto Rico and the Fifth Amendment to the Constitution of the United States of America.

"Error 3. The court committed manifest error in rendering judgment against the appellant and in deciding that the defendant was bound to maintain chains or gates and have an employee or flagman to give warning of the coming of trains to the persons or vehicles going upon the tracks at said grade crossing.

"Error 4. The court erred in rendering judgment on the ground that the defendant did not maintain in the place of the accident any devices for signalling the approach of trains."

The evidence shows that the vehicle driven by Francisco Olmeda was going towards Lajas, descending slowly and that after taking a turn it continued traveling at a moderate rate of speed until it reached the crossing, where it collided with the train of the defendant coming from Lajas. The testimony of the witnesses and the photographs taken of the place of the accident show that there were an embankment and some shrubbery which obstructed the view at least for a distance near the crossing. The lower court, in the eighth paragraph of its opinion, states that the locomotive was traveling at the customary speed and that it sounded the whistle as usual, and further on, in the ninth paragraph, it states that the proximate cause of the accident was the negligence of the defendant in failing to comply with subdivision 9 of section 3 of Act No. 70 of 1917 (Session Laws, Vol. II, p. 432), and also in failing to give proper and adequate warning to plaintiff Francisco Olmeda of the approach of the train to the grade crossing where the accident occurred, considering the conditions of the crossing and the lack of safeguards therein; and further in failing to observe all the precautions which the law and the special conditions of the crossing required. It may be seen that the lower court states that the defendant blew the whistle as usual, and this being one of the duties imposed by subdivision 9 of section 2 of said act, we assume that when the court said that no proper warning was given to Francisco Olmeda, it referred to the other precautions to be taken by the railroad companies according to the cited section.

The negligence charged against the defendant for its failure to have chains and adopt other precautions at the crossing has been amply discussed by the parties, plaintiffs maintaining that it was the duty of the company to comply with the provisions of the statute in opposition to the contention of the defendant that said duty had not arisen yet.

We think that the duty of railroad companies to maintain safeguards at the crossings of public roads is anterior to Act No. 70, approved December 6, 1917 (Session Laws, Vol. II, p. 432). Our Legislature, in enacting this statute incorporated in it principles of public safety that are recognized and established in order to protect the life of the citizens. The highway in question, known as No. 39, extends from San Germán to Guánica and a part thereof from Lajas to a place beyond the crossing where the accident occurred. Evidence was offered to prove that this highway was constructed and opened to the public in 1914 or 1915. The accident occurred in 1928. The lower court in its opinion took judicial notice of the existence of a public road crossing the railroad track at said place. The appellant strongly urges that according to sections 6 and 34 of the Act of 1917 it could not be charged with the duty of maintaining any particular safeguards at the crossing until the road should be repaired by the Public Service Commission to be a public road and the railroad company should be notified of that fact. We think that there is nothing in the law which would prevent a road from becoming a public highway without the assent of said commission. The evidence adduced, including the photographs introduced, tends to prove that the road was a public one. Incidentally the defendant contends that only the Public Service Commission had authority, under section 34, *supra,* to compel defendant to maintain special safeguards at specified places, and after a declaration of necessity and convenience, to permit a public road to cross the tracks of a railroad company. (Section 6 of the cited act.) We do not agree with the appellant. Once the public character of a road is established, the inaction of the commission can not be set up by the railroad company in order to avoid the duties imposed upon it by law and required for the security and protection of the persons traveling upon the road and the crossing. A public road may be such without any declaration to that ef-

fect by the Public Service Commission. The road in question was a main highway between Lajas and the other places lying in the direction of Guánica. Automobiles necessarily have to use it frequently. The evidence tended to show that the Department of the Interior, long before the accident, had built this road and considered it public, and that it was generally so regarded by the public.

The circumstance that the appellees sought to prove the public character of the road, when they could have relied in the judicial notice of that fact as occurred in the case of *Príncipe* v. *American Railroad Co.*, 22 P.R.R. 282, does not weaken their contention. The facts established show the public character of the road.

Section 34 of Act No. 70 of 1917 provides in part as follows:

"The commission shall have exclusive power to determine, order and prescribe, in accordance with plans and specifications to be approved by it, the just and reasonable manner, including the particular point of crossing in which the tracks or other facilities of any public-service company may be constructed across the tracks or other facilities of any other public-service company at grade, or above or below grade, or at the same or different levels; or in which the tracks or other facilities of any railroad company or street-railway company may be constructed across the tracks or other facilities of any other railroad company or street-railway company, or across any public highway, at grade or above or below grade; or in which any public highway may be constructed across the tracks or other facilities of any railroad company or street railway company at grade, or above or below grade; and to determine, order and prescribe the terms and conditions of installation and operation, maintenance and protection of all such crossings which may now or hereafter be constructed, including the stationing of watchmen thereat, of the installation and regulation of lights, block or other system of signaling, safety appliances, devices, or such other means or instrumentalities as may to the commission appear reasonable and necessary, to the end, that accidents may be prevented and the safety of the public promoted.

"No such crossing shall be constructed without the approval of the commission, evidenced by its 'certificate of public convenience', as

provided in this Act; but in no case shall the approval or consent of any court, board or other commission or officer or of any municipality be necessary therefor. It shall be proper, however, for the commission, by general rule or order, whenever the same can be properly regulated by suitable general rule, to prescribe the terms and conditions under which such crossing may be constructed, operated, maintained or protected, without the particular approval of the commission.

"The commission shall also have exclusive power, upon its own motion or upon complaint and after hearing, as hereinafter provided (of which all the parties in interest, including the owners of adjacent property, shall have due notice), to order any crossing aforesaid, now existing or hereafter constructed, to be relocated or altered, or to be abolished, according to plans and specifications to be approved and upon just and reasonable terms and conditions to be prescribed by the commission."

Said section does not have the scope attributed to it by the defendant in maintaining that a public crossing can only be such by the consent of the commission. Similarly as in the case of a suburb, a public road may be established by public user, especially where, as in the instant case, officers with some authority from the Legislature have intervened. Section 6 of said act does not militate against this. In 1913, the act authorizing the Commissioner of the Interior to construct the road was approved. It is the duty of railroad companies to maintain gates, chains, or other adequate safeguards at all crossings of public or insular roads, and there is no doubt that the defendant was negligent in failing to comply with those requisites of safety and protection. We can not accept the contention of the company that it has been deprived of its property without due process of law by the holding of the lower court that there is a public crossing at the place of the accident. Such holding does not deprive defendant of any property.

The fifth, sixth, seventh, and eighth assignments refer to the obstructed view of the track and to the finding of the lower court that the chauffeur could not see the train coming when

he reached or went upon the crossing. These assignments are closely related to the question of contributory negligence set up by the defendant and will be discussed at the proper time in connection with that defense.

It is not necessary either to discuss separately the ninth assignment of error, which relates to the finding of the court *a quo* that the defendant had failed to give proper and adequate warning to the driver Francisco Olmeda.

It is urged that the case of *Nashville Chattanooga St. Louis Railway Co.* v. *R. D. White*, 278 U. S. 456, does not affect the doctrine of the case of *Goodman* v. *Baltimore & Ohio R. R. Co.*, 275 L. Ed. 167, and that the lower court erred in interpreting the former and making it applicable to the instant case. This is the tenth error assigned. The next assignment is that the lower court should not have rendered judgment in favor of plaintiffs, because the latter were guilty of contributory negligence and this negligence was the proximate and immediate cause of the accident.

In our opinion the *Goodman* case should not be interpreted in the sense of imposing on the driver of a motor vehicle the duty to stop always upon reaching a railroad track. It does not seem reasonable to require invariably, in all cases, that the driver should stop completely before going upon the tracks. The general jurisprudence does not sanction such rule. It has been said by a number of courts that a driver of a motor vehicle who intends to cross the tracks of a railroad must stop, look, and listen, at a place from which he can see over the tracks, in order to ascertain whether a train is coming. The prevailing rule, however, is that no such duty is invariably imposed on the traveler as a matter of law. The controverted questions are not always the same, the facts change, and in order to judge the conduct of a driver who has not stopped his vehicle, the circumstances attending his reaching the crossing, his ignorance or knowledge of the situation of the track, and the reliance he may have placed

on his opportunity for seeing and hearing, in either direction along the track, must be considered. We have heretofore said that each case has its peculiarities, its characteristic features, its special mark, its own physiognomy, and that it would be no easy task to do justice if in order to determine what facts constitute ordinary care or negligence we had to follow fixed and invariable rules. *Rivera* v. *Central Pasto Viejo, Inc.*, 44 P.R.R. 236, 258. To determine whether or not there was negligence in a particular case we must ask ourselves what a reasonably prudent person would have done in similar circumstances. We must not expect from human nature more than what it can humanly give, and it does not seem reasonable to require precautions which are not adopted in the ordinary course of human conduct, no matter how justified they be when there is a special reason for their necessity, in caring for our own safety and that of others.

The question to be decided is whether, according to the facts proved, this is a case in which special care should have been exercised by the truck driver, Francisco Olmeda, when approaching and attempting to cross the tracks. This plaintiff testified that while crossing the Guánica tracks in the direction of Lajas, he collided with a train coming from Lajas towards Ponce; that he had passed that place two or three times before, but not when a train was going over the crossing; that he was coming down an incline on second gear; that he knew that the railroad tracks were there and there were no chains or gates at the crossing; that he had never seen chains used there at other occasions when he had gone by the place. We have carefully examined the testimony of this witness and nowhere does he state that he looked both ways on the track or that he tried to look and listen. He confined himself to the statement that he heard no warning of the approach of the train and that he saw it at the moment of collision, and that he did not stop before crossing the tracks because he did not see any sign to stop.

Plaintiffs maintain that the chauffeur never had an opportunity to cross the tracks when a train was going by and hence could not know whether the company failed to observe the safety statute and did not take the precautions required by law. It is clear that in order to know whether there were chains or gates at the crossing, the driver of the truck did not have to approach the same when a train was going by.

In its findings of fact the court declared that the view of defendant's tracks was totally obstructed and that the driver, Francisco Olmeda, could not stop, as he did not stop, the truck to see from a distant place whether or not the train of defendant was coming. As to the obstruction of the view of the tracks, the engineer Etienne Totti, an employee of the defendant corporation, testified that a person standing two meters from the tracks could see for a distance of one hundred meters along the same, and that at a point three meters from the tracks a train going from Lajas towards Guánica could be seen at a distance of eighty meters before reaching the crossing. He added that a person in a truck, standing three meters from the tracks, could see for a distance of eighty meters along the same, perhaps better, the point of observation being then higher. This testimony is uncontradicted, unless it is considered as in conflict with the statement of Antonio Vargas, a witness for plaintiffs, who stated that he was about 25 or 30 meters from the crossing and that as ''it is reduced there, obstructed by the four corners, he saw the train emerge and hit the right side of the truck.'' However, the difference between the statements of both witnesses as to the distance should be noted. Totti testified that 80 meters of railroad track could be observed from a point lying at a distance of 3 meters from the crossing, whereas Vargas, according to his own testimony, was about 25 or 30 meters from said crossing. The photographs of the place which were introduced in evidence, do not show a complete obstruction. Both parties admit as a fact that the view was obstructed. The plaintiffs

maintain that the obstruction was total; the defendant, based on the testimony of the engineer, Mr. Totti, and on the photographs already mentioned, assert that a person standing three meters from the tracks could see a train coming at a distance of 80 meters before it reached the crossing.

The lower court weighed the evidence and rendered judgment in favor of the plaintiffs, holding that Olmeda was not guilty of contributory negligence. The contributory negligence of this plaintiff, we think, arises from the evidence as a matter of law. His very statements show that he was familiar with the crossing and knew that there were no gates or chains there. It has been proved that the view was obstructed and the engineer Totti testified, and his testimony was not contradicted, that a view could be obtained at a distance of three meters from the crossing. The circumstances of this case show, in our opinion, that the driver of the motor vehicle should have exercised special care when reaching the crossing. It appears, however, that he exercised no other precaution than to travel at 6 miles per hour, without looking both ways on the tracks, and that he made no attempt to look or listen. It seems advisable to bear in mind that the truck was going down an incline when approaching the crossing and that, as testified to by Cornelio Cruz, a witness for plaintiffs, the transmission of the truck made some noise.

We do not share the views of the trial court with respect to the exclusive character of the negligence of the defendant. We are of the opinion that the conduct of Francisco Olmeda, in failing to adopt precautions required by prudence, constituted a substantial factor and played an important part in causing the accident.

The lower court in its opinion states that, although plaintiff Francisco Olmeda was guilty of contributory negligence, his negligence could not be imputed to either plaintiff Pedro Mercado or Ernesto Rodríguez Feliú, son of plaintiff Rosa Feliú, or Fernando García, owner of the truck. The appellant

in its twelfth assignment of error characterizes this declaration as erroneous. Appellant maintains that Pedro Mercado, who walked behind the truck with a block to place it under the wheels so as to prevent the vehicle from moving backwards, jumped again on the truck before it reached the railroad track. We fail to see how contributory negligence can be imputed to Pedro Mercado, who could not anticipate that Olmeda, who was driving the truck at a moderate speed, would not stop before reaching the crossing. Ernesto Rodríguez was seated next to the driver of the truck. There is no evidence in the record tending to prove that this passenger was guilty of negligence. It was not even proved that he knew of the crossing or that he had knowledge that there were no chains, gates, or any other safeguards.

In the case of *Domínguez* v. *P. R. Ry., Light & Power Co.,* 19 P.R.R. 1034, this court said:

"While the general rule established by English decisions was that the negligence of the driver would be attributed to a passenger in cases of accidents caused by the negligence of a third party to which the negligence of the driver contributed and this doctrine was followed in a few English and American decisions, said decisions were expressly rejected later in England and disapproved by the Supreme Court of the United States in the case of *Little* v. *Hackett,* 116 U. S., 366, 6 S. Ct., 391, 29 L. ed., 652, the general rule now being that the negligence of the driver is not attributable to the passenger when the latter has no control over said driver. It is true, as held by the lower court, that as an exception to this general rule the negligence of the driver may be attributed to the passenger when the latter had an opportunity of discovering and avoiding the danger by the exercise of ordinary care and neither discovered nor prevented it, but, in order to conclude that the negligence of a *chauffeur* who drives an automobile may be imputed to the passenger seated in the tonneau, it is necessary that the defendant prove that the circumstances were such that the appellant was under obligation to call attention during the trip to the grade crossing on the public highway. We do not believe that the mere fact that the plaintiff knew of the existence of said crossing imposed upon him the duty of looking out for the same and of notifying the driver of the automobile. Although the appellant was traveling with a *chauffeur;*

whom he did not know, he had the right to expect him to be careful and prudent like the majority of men and to confide in his skill in the management of the car, it being very difficult in such class of vehicles to determine at a moment's notice whether an accident can or cannot be avoided on account of the high rate of speed. The appellant began his journey with that *chauffeur* and it has not been shown that up to the moment of the collision which originated the claim anything had occurred which threw any doubt upon the skill or prudence of the driver. We think that the appellant was not under any obligation to keep a lookout for every danger which might exist on the road, or even for those which he knew about, or that he was required to call the attention of the driver to them in each case. Neither do we believe that the rule that the passenger could see and hear is so strict as to imply always that necessarily the passenger actually did see and hear, unless it is proved that in point of fact he was looking in the direction of the dangerous place.''

From the opinion of the Supreme Court of California, in the case of *Marchetti* v. *Southern Pac. Co.*, 269 Pac. 530, we copy the following excerpts:

''The opinion of the trial court, given at the time of granting the nonsuit, is set out in full in the record. It appears therefrom that the order was granted solely upon the ground that the evidence showed that the deceased was guilty of contributory negligence which proximately caused his death. In this we think the court was in error. The evidence bearing upon this point was undisputed. The deceased was riding with Connors under the latter's direction, and had no control whatever over the operation of the automobile in which they were riding. There can be no question of Connors' negligence in driving the machine onto the railroad crossing without taking the proper precautions to observe whether a train was or was not approaching. The negligence of the driver of a machine, however, cannot be imputed to a passenger therein, in the absence of any evidence showing that the latter exercised some control over the driver or that he possessed the power to supervise or direct the manner in which the automobile should be operated. *Bryant* v. *Pacific Electric Ry. Co.*, 174 Cal. 737, 164 P. 385; *Irwin* v. *Golden State Auto Tour Corp.*, 178 Cal. 10, 171 P. 1059; *Nichols* v. *Pacific Electric Ry. Co.*, 178 Cal. 630, 174 P. 319. In this case there was not such evidence. The deceased, as we have before stated, was simply going with Connors, in the latter's machine, for the purpose of attending to some

matter of business regarding their employer's property. Connors was the foreman of his employer, and the deceased was subject to his orders. Connors had entire control of the machine, and was operating the same without any assistance or direction on the part of the deceased. If the deceased, therefore, was guilty of contributory negligence, it must have been by some act either of commission or omission on his part which of itself constituted contributory negligence. There was no evidence in the case tending to show any such act of negligence on the part of the deceased. All the witness agreed that the deceased was simply sitting in the machine at the side of Connors, and that he was looking straight ahead of him while they were traveling along A street and just before their machine collided with the defendant's train. No witness testified, nor is there any evidence from which it may be inferred, that the deceased exercised or attempted to exercise any control or direction over the operation of the automobile by Connors.''

In the case of *Cunningham et al.* v. *St. Louis,* 9 S. W. (2d) 166, the court said:

''We now come to the question of Mattie Cunningham's contributory negligence. Since she was a guest in the automobile, she was not obliged to use the highest degree of care, as was the driver, but only that care which a person of ordinary prudence would exercise under the same or similar circumstances. *Durbien* v. *St. Louis & San Francisco Ry. Co.* (Mo. App.) 275 S. W. 358; *Allen* v. *Railway,* 313 Mo. 42, 281 S. W. 737. Assuming, for the purpose of this case, that the driver of the car was negligent in attempting to cross the track in front of the fast-moving train, which was in plain sight, his negligence cannot be attributed to her. Our Supreme Court has said that:

'''We fully subscribe to the doctrine that the occupant of a vehicle cannot abandon the exercise of his own faculties and intrust his safety absolutely to the driver, regardless of the imminence of danger or the visible lack of ordinary caution on the part of the driver to avoid harm . . . Yet it is a matter of common knowledge that under ordinary circumstances such occupants do largely rely upon the driver, who has the exclusive control and management of the vehicle, exercising the required degree of care, and for that reason courts are not justified in adopting a hard and fast rule that they are guilty of negligence in doing so. Every case must depend upon its own particular facts.' ''

We disregard the contention that Mercado and Olmeda could obtain compensation from their employer or from the Industrial Commission under the Workmen's Compensation Act. The law does not exempt a third person from liability for his negligent acts, nor does it prescribe an exclusive remedy before the Industrial Commission in this kind of cases.

The other assignments of error refer to the amount of damages awarded to each plaintiff by the lower court, and to the imposition of costs on the defendant. We are of the opinion that the amounts granted as damages are not excessive, and we accept the finding of the lower court in so far as the judgment appealed from is affirmed.

As to the award of costs, we think that it must stand in the cases of Pedro Mercado and Rosa Feliú, as granted by the district court.

In accordance with the reasons already stated, we consider that the negligence of the defendant corporation has been proved, and we hold that Francisco Olmeda, who was guilty of contributory negligence, can not recover any damages, and similarly as to his employer Fernando García, for Olmeda was acting in the course of his employment. The judgment must be reversed as regards those two plaintiffs and affirmed as to Pedro Mercado and Rosa Feliú, mother of Ernesto Rodríguez.

Mr. Chief Justice Del Toro dissented as to the reversal of the judgments rendered in the cases of Fernando García and Francisco Olmeda.