VIOLA CHEATHAM, RESPONDENT, v. EVERETT CHARTRAU, APPELLANT.
—176 S. W. (2d) 865.

Springfield Court of Appeals, January 6, 1944.

*R. F. Baynes* and *Harry H. Bock* for appellant.

*Ward & Reeves* for respondent.

796

FULBRIGHT, J.—For convenience respondent will be referred to as plaintiff and appellant as defendant throughout this opinion.

This is an action wherein plaintiff seeks to recover damages in the amount of $10,000 for personal injuries received in an automobile collision. The suit was tried at the May Term, 1943, of the Circuit Court of New Madrid County, resulting in a verdict and judgment for plaintiff, for the sum of $5000, from which judgment defendant has duly appealed.

There seems to be no controversy over the pleadings; the petition is in conventional form; the amended answer is a general denial coupled with a plea of contributory negligence.

It is alleged in said amended answer "that the injuries, if any, and damages, if any, complained of in plaintiff's petition were the direct and proximate results of the negligence of the plaintiff and Alfred H. Cheatham, the driver of the automobile in which plaintiff was riding . . . ." It further charges Alfred H. Cheatham with negligence in many respects and failing to use the highest degree of care in the operation and manner of driving the automobile and that plaintiff saw or could have seen that Alfred H. Cheatham was guilty of negligence and that she carelessly and negligently failed to warn Alfred H. Cheatham of his careless and negligent manner of operating and driving the said automobile, as it was her duty to do; and finally alleges that plaintiff and Alfred H. Cheatham were, at the time of plaintiff's injuries, if any, engaged in a joint enterprise.

The evidence discloses the following: Viola Cheatham, the plaintiff, was at the time of the trial forty-one years of age, the wife of Alfred H. Cheatham and the mother of seven children. On July 13, 1942, plaintiff and her husband, Erny Howell and his wife and Mr. Woods and his wife made a trip from near Steele, Missouri, to Cape Girardeau, Missouri. The six ·people were riding in a '42 model, five passenger Chevrolet Coupe and traveling over U. S. Highway #61, which runs north and south from Steele to Cape Girardeau. Upon their return they collided with a '40 model International pick-up truck about one and one-half miles north of the Greyhound Bus Station at New Madrid, Missouri. At the place of the accident the highway is straight and practically level; it is a concrete slab eighteen feet in width with a black line running through the center; on the west side of the slab is a hard shoulder about one and one-half feet wide and a dirt shoulder about six feet wide sloping down to a shallow ditch. The accident occurred about one o'clock in the afternoon; the Chevrolet coupe was traveling south on the west side of the highway and the truck was going north. After the collision the coupe came to a stop on the right-hand or west side of the highway, headed in an angling position toward the east, the back half being on the west shoulder and the front half of the car on the slab. The truck came to a stop north of the coupe and on the east side of the highway headed north. There were skid marks made by the coupe traveling south beginning about seventy-five feet north of the point of collision. These skid marks were light for forty feet and the last thirty-five feet, up to the point of collision, were heavy and appeared as if all four wheels made them. The marks made by the right-hand wheels, as the vehicle moved south, were approximately a foot from the west edge of the highway, and the skid marks made by the left wheels were two feet and three inches·left or west from the center line, and continued approximately the same distance west of the center line, south to the point of impact. No visible marks of any kind were made by the truck before it reached the point of collision, but from there skid marks were made by its left front wheel which led from west of the center line in a northeasterly direction to where the truck stopped.

At the time of the accident the plaintiff, her husband, Alfred Cheatham and Mrs. Woods occupied the front seat, plaintiff being in the middle, and Mr. and Mrs. Howell and Mr. Woods in the back seat. They were proceeding south at a speed of between forty and fifty miles per hour when Alfred Cheatham, the driver, observed defendant's approaching truck. It was between 200 and 300 yards to the south, and was passing around another truck which was also traveling north. There were no obstructions on the highway and Mr. Cheatham was driving as far west of the black center line as he could without getting off the concrete. Defendant's truck, as it approached, was traveling at a speed of about sixty miles per hour, the left wheels

well over the center line; it was wobbling and zig-zagging as it approached and the driver's head was drooped down over the steering wheel. Mr. Cheatham commenced slowing down and putting on the brakes; when he saw the driver of the truck wasn't going to get over on his side of the road he applied them heavier and finally locked the wheels and had almost come to a stop at the time of the impact. An instant before the impact the driver of the truck raised his head and attempted to pull to the right, but was too late to avoid hitting the coupe. The truck struck with great force, breaking down its left front wheel and wrecking the coupe.

Plaintiff testified she saw the truck approaching but gave no warning to her husband. She said: "I didn't know which way to tell my husband to go." She had had very little experience in driving a car. Mr. Cheatham was an experienced driver—had been driving a car for "25 years or maybe longer."

There was also evidence tending to show that defendant, Everett Chartrau, the driver and only occupant of the truck, had the odor of liquor on his breath; that the left front tire on the truck was not flat as it approached the coupe and that there was no blow-out prior to the impact. All the occupants of the coupe were injured more or less.

The evidence of the defendant, Everett Chartrau, shows that he was the driver of the truck; that he was only driving about thirty-five miles per hour and that just before he met the coupe coming south his left front tire blew out causing his truck to swerve to the left and he could not get it back to the right side of the road in time to avoid the collision; and stated that the coupe was driving at a high rate of speed; that he passed no car just before the collision. He stated that he was sober—had not had a drink that day and that there was no odor of liquor on his breath. Other witnesses in defendant's behalf tended to corroborate his testimony in part.

Defendant's Assignment of Errors is as follows:

"1. The Court erred in admitting incompetent, irrelevant and immaterial evidence offered by the plaintiff over the objection of the defendant.

"2. The Court erred in refusing defendant's requested instruction in the nature of a demurrer to the evidence at the close of the whole case.

"3. The Court erred in the instructions given at the request of plaintiff, and more particularly, Instruction No. 3.

"4. The Court erred in refusing the instruction offered by appellant, and which was by the Court refused, as shown on pages 83 and 84 of the abstract of the record.

"5. The verdict of the jury is excessive, and so excessive as to show bias and prejudice on the part of the jury.

"6. The Court erred in overruling appellant's objection to the improper argument of plaintiff's counsel to the jury to the effect that the plaintiff had permanent injuries when there was no evidence of permanency of her injuries.

"7. The Court erred in refusing to rebuke counsel for plaintiff in persisting to ask the witnesses if they could smell intoxicating liquor on the breath of the defendant, or could smell intoxicating liquor when near the defendant, and in refusing to sustain appellant's motion for a mistrial, as by appellant requested, when plaintiff's counsel persisted in attempting to elicit evidence from various witnesses to the effect that defendant had been drinking intoxicating liquor."

In support of Assignment No. One defendant proceeds on the theory that it was error to admit testimony to the effect that witnesses smelled intoxicating liquor on his breath at the time of the collision, and that he had the appearance of an intoxicated man. The only case cited by defendant to sustain his contention is the case of Willis v. K. C. Terminal Ry. Co., 199 S. W. 736. This issue arose on rehearing. The comments of the court are short and we quote it in full as follows:

"Defendant complains of the action of the court in striking out the testimony of one of the police officers, wherein the latter stated, 'the fact is I thought the man was drunk.' The defendant claims that this was the statement of the opinion of the police officer of the physical appearance of plaintiff, and was, therefore, competent. We think this evidence was incompetent for two reasons: first, it was apparent that the trial court was of the opinion that the witness was merely hazarding a guess instead of expressing a mental conviction, and in this we think the trial court was correct. Where a witness though qualified to express an opinion, testifies that he "guesses" or "thinks" so and so to be the case, such testimony will be rejected, unless it sufficiently appears that these terms are used to express his opinion or judgment. [Hunter v. Helsley, 98 Mo. App. 616, 73 S. W. 719.] Second. The witness had not stated facts justifying an opinion that the plaintiff was drunk, and for this additional reason the expression was properly stricken out."

As we read the above opinion it leaves the clear inference that under the facts and circumstances established by the evidence in the instant case, proof that defendant had been drinking intoxicating liquor or was under the influence of intoxicating liquor at the time of the collision, is competent evidence. By reference to the abstract it appears that the court struck out all testimony to the effect that defendant appeared to be intoxicated and sustained objections to or struck out all objectionable matter relative to the odor of intoxicating liquor on his breath; but did admit in evidence the testimony of qualified witnesses to the effect that defendant had the odor of liquor on his breath at the time of the collision. This is a circumstance tending to prove that defendant had been drinking and when coupled with the fact that the truck, as it approached the

point of collision, was zig-zagging and wobbling, and the further fact that defendant had his head drooped down over the steering wheel, it becomes competent and material evidence, and the court did not err in admitting it. [Willis v. K. C. Terminal Ry. Co., *supra*; Clyde v. Grill, 172 N. Y. S. 136; Lincoln Taxi Cab Co. v. Smith, 150 N. Y. S. 86; Szpyrka v. International Ry. Co., 210 N. Y. S. 553, 213 App. Div. 390; Learned v. Hawthorne (Mass.), 169 N. E. 557, 269 Mass. 554; Tipton v. Estill Ice Co., 132 S. W. (2d) 347, 279 Ky. 793; Cox v. Kellog's Sales Co., 95 Pac. (2d) 531, 150 Kans. 561; 9 Blashfield's Cyc. of Automobile Law & Practice, secs. 6185-6186.]

In his second assignment of error defendant contends that the court erred in overruling his demurrer to the evidence at the close of the whole case. It is a well-established rule in this State, requiring no citations that in passing upon defendant's demurrer to the evidence the court must accept as true all of plaintiff's evidence and give him the benefit of all reasonable, favorable inferences that may be drawn therefrom; and disregard all of defendant's evidence.

We have heretofore set out at length all the facts established by the evidence and it is our conclusion that there was ample evidence to submit the case to the jury. Defendant contends "that plaintiff could have, by merely suggesting to the driver of the car she was riding in, prevented the accident; . . . that the evidence all shows that she saw the defendant in a position of imminent peril in ample time to have suggested to the driver of the car which she was in, to pull slightly to the right which would have avoided the accident, but that she refused to do so;" and that "by her own acts and conduct in that respect she is not entitled to recover as a matter of law, . . . ."

The following general statement of the duty of a guest is laid down in Berry on the Law of Automobiles (6·Ed.), Vol. 1, sec. 665, and is quoted with approval in the case of Kaley v. Huntley, 63 S. W. (2d) 21, 1. c. 24: "When dangers, which are either reasonably manifest or known to an invited guest, confront the driver of a vehicle, and the guest has adequate and proper opportunity to conduct or influence the situation for safety, if he sits by without warning or protest and permits himself to be driven carelessly to his injury, this is negligence which will bar recovery."

The undisputed testimony shows that the driver of the coupe, plaintiff's husband, saw the approaching truck when it was between 200 and 300 yards away and before plaintiff saw it; that he watched the approaching truck from the time he first discovered it until the collision occurred; that he was watching it "and trying to see if I could get out of his way. I pulled over as far as I could run on the highway. . . . I was in a close place and watching and trying to keep the steering wheel going and watching the brakes. At the time of the collision I was not going fast; I think I had come almost

to a stop. . . . I was traveling on the right side as near the right side as I could get to give him all the space I could.''

Plaintiff first saw the approaching truck when it was between 100 and 200 yards away. The driver saw it before plaintiff, and saw all that she saw or could have seen. Plaintiff testified: ''I didn't know the truck would pull toward us and then back toward the black line; I didn't know which way to tell my husband to go.'' It therefore would have availed nothing for her to have warned the driver of the coupe of the approaching truck. Defendant's only eye witness to the collision testified that something happened and the truck ''swerved suddenly to the left'' and when it did so it hit the car. Therefore, taking defendant's evidence as a guide there was no time for plaintiff to protest to or warn her husband of the danger, even though she had sensed it. And, taking the evidence as a whole, there was no causal connection shown between the alleged negligent act or omission on the part of plaintiff and the collision. Such negligence, if any, did not directly contribute to and was not the proximate cause of her injury. [Chervek v. St. Louis Public Service Co., 173 S. W. (2d) 603; Buehler v. Festus Mercantile Co., 119 S. W. (2d) 961; Rosenstein v. Lewis Automobile Co., 34 S. W. (2d) 1023.]

Moreover, we cannot say that the driver of the coupe in which plaintiff was riding was conclusively guilty of contributory negligence as a matter of law. But, be that as it may, it is stated in the case of Silsby v. Hinchey (Mo. App.), 107 S. W. (2d) 812, l. c. 815: ''As a general proposition of law, the wife, lacking the right to control her husband's actions, and he being in no sense of the law her servant or agent, is merely to be regarded as her husband's guest when riding with him in an automobile which he is driving, and his negligence, if any, in the operation of the automobile is therefore not to be imputed to her. [Corn v. Kansas City, C. C. & St. J. R. Co. (Mo. Sup.), 228 S. W. 78; Allen v. Chicago, B. & Q. R. Co., 313 Mo. 42, 281 S. W. 737; Setzer v. Ulrich (Mo. App.), 90 S. W. (2d) 154; Pettitt v. Kansas City (Mo. App.), 267 S. W. 954.]'' [Sloan v. Farmer, 168 S. W. (2d) 467, l. c. 471.]

From the above observations we must necessarily hold that plaintiff was not guilty of contributory negligence, either as a matter of law or of fact, and that the court did not err in overruling defendant's demurrer to the evidence.

Assignment Number Three is lodged against all the instructions given on behalf of plaintiff and particularly instruction number three, the error charged being that the instructions ''wholly ignored the defense in the case and wholly ignored the duty the plaintiff owed to the defendant to prevent the accident, if within her power, which she, under the evidence, refused to do;'' and that instruction number three ''erroneously refers the jury to the answer for the facts constituting contributory negligence without setting any facts out to the jury.''

Obviously, the giving of instruction number three was erroneous for the reason there was no evidence on which to predicate it. As we view it the record is absolutely void of any evidence tending in the remotest degree to show that plaintiff was guilty of any negligence which contributed to her injury. The defendant could not have been prejudiced by the giving of the instruction or the jury misled thereby. [Sherwood v. Ry. Co., 132 Mo. 339; O'Hare v. Laundry & Dry Cleaning Co., 170 S. W. (2d) 95; Bradford v. Ry., 133 Mo. App. 705.] Therefore, the giving of the instruction was harmless error; and the complaint against plaintiff's instructions generally that they wholly ignored the defense in the case, is without merit as the given instructions on behalf of defendant fully covered his defense.

From the fact that we hold there was no evidence presented upon which the trial court could predicate an instruction on contributory negligence, it necessarily follows that it was not error to refuse defendant's instruction complained of in Assignment Number Four.

We shall next consider Assignment Number Six leveled at alleged improper argument of plaintiff's counsel. Referring to the record we find the following:

"MR. REEVES: Some people call this an accident but it was no accident, it certainly wasn't, it was called by this good mother who was permanently injured......(interrupted).

"MR. BAYNES: I object to that form of argument, there is no evidence whatever of permanent injury in this case.

"THE COURT: The jury saw her arm, overruled.

"MR. BAYNES: Exception."

This is all the record discloses concerning the alleged objectionable argument. No reference to plaintiff being permanently injured was made thereafter. At the close of the opening argument by Mr. Reeves defendant's counsel waived further argument.

We do not think the statement made by counsel for plaintiff is sufficient, standing alone, to constitute reversible error, and Assignment Number Six must be ruled against defendant.

What we have said with respect to the assignment number one, in effect, disposes of assignment number seven. Since we hold that under the facts and circumstances it was competent to prove that defendant had been drinking intoxicating liquors and had the odor of intoxicating liquor on his breath, the court did not err in permitting plaintiff to make inquiries in regard thereto.

Finally, we shall consider the assignment to the effect that the verdict of the jury is excessive. This necessarily requires a review of the evidence pertaining to plaintiff's injuries. It is shown that bones in both hands were broken; that her wrists were broken and both arms broken with the bones protruding through the flesh; she had a cut on her forehead, three or four on her throat; her left ear was cut, and also a cut just above her ear; she had a cut on her right arm and

cuts about and below each knee. The scars on her head, hands, arm and throat were exhibited to the jury, as well as the enlargement of the bones in her left hand near the wrist. Her left elbow, hand and wrist are stiff and her right arm is crooked and hand stiff.

Doctor Edmundson, who first treated plaintiff after the accident, could not be found and no expert testimony was offered by ·either plaintiff or defendant. Defendant offered no evidence whatever as to plaintiff's injuries or the extent thereof, but one of his witnesses did state on cross-examination: "The lady had both arms broken. I saw the bones sticking out." Before plaintiff received the above injuries she did the house work for her husband and seven children and there was nothing wrong with her physically. At the time of the trial she could "kind of feed and dress herself", but she couldn't do "kitchen" work or "ordinary house work." After she was injured she was taken to Walls Hospital in Blytheville, Arkansas, and treated for fourteen days; after that she had to make trips back and forth to Blytheville for treatment for approximately four weeks.

No definite rule can be laid down as to the amount of damages that should be awarded in a case of this kind. Each case must be determined on its own peculiar facts. However, there should be reasonable uniformity in cases involving similar facts as to the character of injuries sustained. [Johnson v. City of St. Louis, 138 S. W. (2d) 666; Philbert v. Benjaman Ansehl Co., 119 S. W. (2d) 797; Lynch v. Baldwin, 117 S. W. (2d) 273; Sachse v. Highland Dairy Farms Co., 45 S. W. (2d) 934.]

We have not been cited to a case where there is a marked similarity in the facts as to the character of the injuries here sustained. Obviously plaintiff was seriously injured. The jury had the opportunity to observe her hands and arms and the scars upon and about her face and head. The suit was for $10,000, the verdict was for $5,000. There is nothing in the case from which we may infer that the verdict was the result of any improper conduct on the part of the jury and we hesitate to disturb their finding.

"The amount of damages to be awarded . . . rests largely within the province of the jury and the discretion of the trial judge. It will be presumed that the judgment was fair and reasonable and in the exercise of sound discretion under all the circumstances, unless it is so excessive with reference to all of the facts and circumstances as to demonstrate that the jury have acted against the rules of law or have suffered their passions, prejudices, or perverse disregard of justice to mislead them. [Manley v. Wells (Mo. Sup.), 292 S. W. 67.]" [O'Hare v. Laundry & Dry Cleaning Co., supra.]

It may further be said that at the time of the trial the purchasing value of money was much less than it had been for many years prior thereto and it is within the province of this court to take cognizance of that fact in considering the amount awarded plaintiff. [Sachse v. Highland Dairy Farm Co., supra; Hearst v. Chicago B. & Q. R.

Co., 280 Mo. l. c. 572, 219 S. W. 566; 10 A. L. R. 174; Talbert v. C. I. & P. Ry. Co., 321 Mo. 1080, 15 S. W. (2d) 762, l. c. 766; Tresse v. K. C. Public Service Corp., 222 Mo. App. 671, 4 S. W. (2d) 1095-1097.]

We find no reversible error and the judgment of the Circuit Court should be affirmed. It is so ordered. *Blair, P. J.,* and *Smith, J.,* concur.