Kathryn **RODRIGUEZ,**
Respondent/Cross–
Appellant,

v.

**SUZUKI MOTOR CORPORATION** (f/k/a )
Suzuki Motor Company, Ltd. and American Suzuki Motor Corporation, Appellants/Cross–Respondents,

v.

**Deborah DUBIS, Respondent.**

No. 78539.

Supreme Court of Missouri,
En Banc.

Dec. 17, 1996.

Rehearing Denied Jan. 21, 1997.

**8.** *Gregory v. Corrigan,* 685 S.W.2d 840, 843 (Mo. banc 1985).

Frank N. Gundlach, Jordan B. Cherrick, St. Louis, Kenneth W. Starr, Paul T. Cappuccio, Carter G. Phillips, Gene C. Schaerr, Christine A. Liverzani, Michael J. Raphael, Washington, D.C., Sawnie A. McEntire, Houston, TX, Robert B. Fiske, Jr., Frances E. Bivens, New York City, for appellants/cross–respondents.

Maurice B. Graham, John S. Wallach, Theodore H. Hoffman, St. Louis, Albert M. Pearson, III, James E. Butler, Jr., Robert D. Cheeley, Atlanta, GA, Patrick A. Dawson, Marietta, GA, Cheryl A. Callis, St. Louis, for respondent/cross–appellant.

Hugh F. Young, Jr., Reston, VA, Thomas N. Sterchi, Kansas City, MO, Andrew L. Frey, Evan M. Tager, Washington, D.C.,

amicus Product Liability Advisory Council, Inc.

Phillip D. Brady, C. Dean McGrath, Jr., Washington, D.C., Charles H. Lockwood, II, Arlington, VA, Walter L. Cofer, Margaret D. Lineberry, Joseph G. Matye, Kansas City, amicus American Auto. Mfrs. Ass'n and Ass'n of Intern. Auto. Mfrs., Inc.

BENTON, Judge.

Plaintiff Kathryn C. Rodriguez suffered serious permanent injuries when the automobile in which she was riding rolled over in Warren County. Following verdict and judgment for her, Suzuki Motor Corporation ("Suzuki") appealed, alleging constitutional and trial errors. *Mo. Const. art. V, § 3.* This Court concludes that the evidence of alcohol consumption was improperly excluded, and on retrial, the jury should be instructed to award punitive damages only if supported by clear and convincing evidence. Reversed and remanded.

On February 11, 1990, defendant Deborah Dubis was driving a Suzuki Samurai on Highway 94, with plaintiff Rodriguez and Lisa Nunnally as passengers. The vehicle left the right side of the roadway, traveled into the ditch, and struck a 14–inch–high dirt headwall—the side of a cemetery driveway. What happened next was hotly disputed. According to the driver and passengers, the Samurai returned to the roadway, crossed the center line, and when Dubis turned sharply right to correct, the vehicle rolled over. According to Suzuki, the Samurai never returned to the roadway. Instead, the impact with the cemetery driveway launched the vehicle into the air, causing the Samurai to roll in the ditch.

Rodriguez asserted claims of strict products liability, negligence, breach of warranty, and punitive damages against Suzuki, and a negligence claim against Dubis. In addition, Suzuki cross-claimed against Dubis, alleging negligence.

The jury found Rodriguez's damages at $30 million, assessing fault at 100% to Suzuki, 0% to Dubis, and 0% to Rodriguez. In addition, the jury returned punitive damages against Suzuki for $60 million. On remitti-

tur, the circuit court reduced the compensatory award to $20 million and the punitives to $20 million.

## I.

Suzuki argues that the trial judge erred in excluding all evidence of and all references to the consumption of alcohol, which surfaced in two contexts: impeachment of non-party witnesses, and the negligence/comparative negligence of parties Dubis and Rodriguez.

### A. Non-parties

Generally, evidence of alcohol consumption "is relevant and material to the witness's ability to see, hear, perceive and observe." *Johnston v. Conger,* 854 S.W.2d 480, 483 (Mo.App.1993), *citing State v. Caston,* 509 S.W.2d 39, 41 (Mo.1974). This evidence is admissible by cross-examination or by independent testimony. *Caston,* 509 S.W.2d at 41. Any possible impairment of a witness's ability to recall is relevant to her credibility. *Johnston,* 854 S.W.2d at 484; *Sanders v. Armour & Co.,* 292 S.W. 443, 446–47 (Mo.App.1927).

In Suzuki's offer of proof, several witnesses admitted drinking wine before the accident. Passenger Nunnally admitted feeling "tipsy." The trial court erred in barring evidence of alcohol consumption by the non-party witnesses.

### B. Parties

#### 1.

Previously, in a negligence action, evidence of a driver's alcohol consumption was admissible only if coupled with evidence of erratic driving or some other circumstance from which it might be inferred that the driver's physical condition was impaired at the time of the accident. *Doisy v. Edwards,* 398 S.W.2d 846, 849–50[3] (Mo. banc 1966), citing *Cheatham v. Chartrau,* 237 Mo.App. 793, 176 S.W.2d 865, 868 (1944) and *Boehm v. St. Louis Public Service Company,* 368 S.W.2d 361, 372 (Mo.1963); *McHaffie v. Bunch,* 891 S.W.2d 822, 831 (Mo. banc 1995). The apparent rationale was that evidence of drinking could "prejudicially and improperly inflame

the jury's sentiments." *Strycharz v. Barlow,* 904 S.W.2d 419, 425 (Mo.App.1995).

*Doisy*'s logic made more sense under a system of contributory negligence. Under that system, liability was essentially "all or nothing." *Gustafson v. Benda,* 661 S.W.2d 11, 28 (Mo. banc 1983)(Billings, J., concurring). Any contributory negligence barred recovery by the plaintiff. *Walsh v. Southtown Motors Co.,* 445 S.W.2d 342, 348 (Mo. 1969). Similarly, a defendant's liability was for all or none of the damages. *See Gustafson,* 661 S.W.2d at 28; W. Prosser, *Comparative Negligence,* 51 Mich. L.Rev. 465, 474 (1953). Under a zero-sum contributory negligence system, an improper focus on alcohol evidence would bar deserving plaintiffs, or penalize blameless defendants.

■ In 1983 Missouri adopted a comprehensive system of comparative fault. *Gustafson,* 661 S.W.2d at 16. The key to this system is that a jury decides the issues of relative fault and assesses appropriate percentages. *Missouri Pacific Railroad Company v. Whitehead & Kales Company,* 566 S.W.2d 466, 474 (Mo. banc 1978). Comparative fault is based upon the principle of fairness, *id.,* and is more "equitable and just." *Gustafson,* 661 S.W.2d at 28. Since the apportionment of fault and damages is factual by nature, a jury should be as fully informed as possible in order to determine the relative fault of the parties. *See* W. Page Keeton *et al., Prosser and Keeton on the Law of Torts* § 67, at 470 (5th ed.1984). A comparative fault system can better accommodate alcohol evidence than a contributory negligence system.

A practical reason to abandon the *Doisy* standard is that its application is inconsistent and unpredictable at trial. In *Broderson v. Farthing,* evidence that the driver consumed three glasses of wine and had alcohol on her breath was excluded because pulling into the path of another vehicle did not show "erratic driving." 762 S.W.2d 548, 550–51 (Mo.App. 1989). In *Strycharz, supra,* evidence that the defendant driver drank two beers and had alcohol on his breath was excluded because the driver's failure to swerve or see the plaintiff (though visible for 900 feet) did not show erratic driving. 904 S.W.2d at 424.

However, in other cases with strikingly similar facts, evidence of alcohol consumption was admissible. In *Bohn v. James,* evidence that the defendant drank three or four beers and had alcohol on his breath was admissible because speeding and failure to keep a proper lookout exhibited erratic driving. 573 S.W.2d 448, 449 (Mo.App.1978). In *Boehm, supra,* a hospital record citing alcoholic breath was admissible because driving a motor scooter through a stop sign at 20 m.p.h. without stopping and with no headlight burning showed erratic driving. 368 S.W.2d at 371. In *Cheatham, supra,* evidence that the defendant had alcohol breath was admissible because driving in a zig-zagging and wobbling manner showed erratic driving. 176 S.W.2d at 868. In *Hager v. McGlynn,* evidence that the defendant consumed three scotch-and-waters and one liqueur was admissible because running a red light and not applying the brakes was erratic driving. 518 S.W.2d 173, 178 (Mo.App.1974), *overruled on other grounds by State ex rel. Sims v. Sanders,* 886 S.W.2d 718, 721 (Mo.App.1994). In *Hansen v. James,* evidence that the driver consumed several alcoholic beverages was admissible because inexplicably leaving the road, striking a utility pole, and going down an enbankment showed erratic driving. 847 S.W.2d 476, 482 (Mo.App.1992).

The cases are not even consistent on whether evidence of blood alcohol content *above* the legal limit is admissible. In *Lauderdale v. Siem,* evidence that the defendant had blood alcohol content above the legal limit was excluded because the accident debris located in plaintiff's lane was not evidence of erratic driving. 725 S.W.2d 897, 900 (Mo.App.1987). Similarly, in *Bentley v. Crews,* evidence of blood alcohol content above the legal limit was excluded because crossing the center line was not erratic driving. 630 S.W.2d 99, 106–07 (Mo.App.1981). However, in *Diener v. Mid–American Coaches, Inc.,* a blood alcohol test above the legal limit was admissible because the driver crossed the center line. 378 S.W.2d 509, 512 (Mo.1964). In *Miller v. Eaton,* evidence that the driver's blood alcohol content was above the legal limit was admissible because speed-

ing on narrow, curving rural roads was erratic driving. 733 S.W.2d 31, 34 (Mo.App.1987).

The inconsistency and unpredictability of the case law is not surprising in view of the confusion in the original pronouncement of the rule. *Doisy* itself concerned a head-on collision. The plaintiff offered evidence that: (1) a highway patrolman smelled liquor on defendant's breath; and (2) defendant's car crossed the center line and continued left toward the plaintiff for 100–300 feet, finally colliding with the plaintiff on the right shoulder of plaintiff's lane. 398 S.W.2d at 848, 849. This Court upheld the trial court's exclusion of the evidence of alcohol breath because there was "no evidence showing erratic driving." *Id.* at 849, 850.

The crowning ambiguity in *Doisy* is that it permits admission of alcohol evidence not only where there is erratic driving, but also in unspecified "other circumstances." Most courts have not even discussed this exception. *See Parry v. Staddon*, 769 S.W.2d 811, 814 n. 3 (Mo.App.1989). However, in *Sewell v. MFA Mutual Insurance Company*, there was no erratic driving. Nevertheless, evidence that the driver consumed five or six beers was admissible because the driver had no recollection of the events before the collision. The court invoked the "other circumstances" exception to infer impairment. 597 S.W.2d 284, 290 (Mo.App.1980). Likewise, in *Parry, supra,* a test showing a blood alcohol content below the legal limit was admissible because failure to take evasive action was not erratic driving, but was other circumstances inferring impairment. 769 S.W.2d at 813. In *Krenski v. Aubuchon*, circumstantial evidence that the defendant smelled of alcohol, was flushed, slurred his speech, was unsteady on his feet, and had bloodshot eyes was admissible because speeding, swerving back and forth into the oncoming lane of traffic, and hitting a parked car was not erratic driving, but showed an impaired physical condition. 841 S.W.2d 721, 727 (Mo.App.1992).

The only pattern in the cases is that almost every trial court determination on admission or exclusion has been affirmed on appeal, despite these wide factual variances. *But see Stojkovic v. Weller*, 802 S.W.2d 152,

154 (Mo. banc 1991); *Bilzing v. Wentzel*, 726 S.W.2d 787, 790 (Mo.App.1987); *Jones v. Freese*, 743 S.W.2d 454, 456–57 (Mo.App. 1987)(2–1). Thus, the *Doisy* standard was no standard at all.

### 2.

■ This Court therefore declares a new standard for parties in civil cases: Evidence of alcohol consumption is admissible, if otherwise relevant and material. This standard applies in two situations. First, when the proponent does not allege intoxication as an independent act of negligence, the evidence of drinking may be part of the proof of other negligent acts alleged. In such cases, consumption of alcohol as an independent negligent act may not be submitted. *See, e.g., Bowman v. Heffron*, 318 S.W.2d 269, 274 (Mo.1958). Nonetheless, the party against whom the evidence of alcohol consumption is admitted may request a limiting instruction. *See Raskey v. Hulewicz*, 185 Neb. 608, 177 N.W.2d 744, 748 (1970); *NJI 2d 3.07–2* (Nebraska jury instructions). "If defendant wished to further emphasize the limited purpose of this evidence, it was free to request an instruction limiting the jury's use of this evidence." *Tune v. Synergy Gas Corp.*, 883 S.W.2d 10, 15 (Mo. banc 1994). *See also State ex rel. Kansas City Public Service Co. v. Shain*, 345 Mo. 543, 134 S.W.2d 58, 61 (Mo.1939); *Scott v. Missouri Ins. Co.*, 361 Mo. 51, 233 S.W.2d 660, 665 (banc 1950).

The second situation occurs when intoxication is alleged as an independent act of negligence. Assuming a submissible case is made, intoxication is a basis for the verdict directing jury instruction. *See MAI 5th 17.21.*

The appropriate jury instruction serves to diminish any undue prejudice. Moreover, there are other ways to lessen possible prejudice. For example, the parties can voir dire potential jurors about their views on alcohol consumption. Examination of witnesses and argument by counsel can place the alcohol consumption in context for the jury. Accordingly, as to discussions of evidence of alcohol consumption, *Doisy* and its progeny are overruled.

**3.**

■ In its crossclaim against the driver Dubis, Suzuki alleged intoxication as an independent act of negligence. Suzuki is entitled to a verdict directing jury instruction if it presents substantial evidence—viewed in the light most favorable to Suzuki—to support its theory of Dubis' negligence. *See Spring v. Kansas City Area Transportation Authority,* 873 S.W.2d 224, 225 (Mo. banc 1994).

Suzuki met this burden by its offers of proof that showed alcohol consumption. Dubis herself admitted drinking two full and three sampler glasses of wine—about one-half bottle total—before the accident (passenger Nunnally testified that Dubis may have had four or five sampler glasses, not just the three Dubis admits drinking; and that "a couple of beers, probably, is all she [Dubis] could handle"). The Highway Patrol Trooper testified that he smelled intoxicants on Dubis' breath at the hospital more than an hour and a half after the accident.

Suzuki also offered evidence showing alcohol consumption as a legal cause of the damages. Suzuki's expert noted a lack of steering prior to collision with the headwall. The expert referred to an eyewitness statement that Dubis' vehicle drifted onto the shoulder, back onto the roadway, and then left the roadway a second time before colliding with the headwall. The Trooper found no evidence of braking or steering maneuvers before collision with the headwall. Dubis admitted driving off the right side of the road onto the shoulder and continuing off the road for 92–100 feet (about 1.2–1.3 seconds) without ever attempting to stop or slow down. Not until she actually felt an impact with the cemetery driveway did she attempt a steering correction. Further, the road was dry with no obstruction, impediment or oncoming traffic to force her off the road. Finally, a medical expert testified that the physical evidence was more consistent with an impaired driver. Suzuki was entitled to a jury instruction on Dubis' intoxication as negligence. *See MAI 5 th 17.21.*

**4.**

■ Next, Suzuki contends that the trial court erred in excluding evidence of passenger/plaintiff Rodriguez's alcohol consumption on the issue of her comparative negligence. In answer to Rodriguez's petition and by its offer of proof, Suzuki asserted the affirmative defense of comparative negligence by "plaintiff's decision to and act of traveling in a vehicle operated by an intoxicated driver." *See, e.g., McHaffie,* 891 S.W.2d at 832, *citing Miller,* 733 S.W.2d at 34. Suzuki did not allege Rodriguez's intoxication as an independent act of negligence, but argued that drinking impacted her decision to enter and remain in the vehicle with an intoxicated driver.

Suzuki is entitled to submit Rodriguez's comparative negligence to the jury under the appropriate comparative fault instruction if it can meet its burden of production. *See Spring,* 873 S.W.2d at 225; *MAI 5 th 32.05.* Suzuki met this burden by offering the following: Rodriguez admitted consuming alcohol with Dubis before entering the vehicle, and Rodriguez's blood alcohol content was about .11 at the time of the accident (compared to the .10 prima facie level of legal intoxication). *§ 577.037 RSMo 1994.*

It is for the trier of fact to determine the weight of such alcohol evidence on plaintiff's decision to travel with an intoxicated driver. However, because Suzuki does not allege Rodriguez's intoxication as an independent act of negligence, Rodriguez may request a limiting instruction.

**II.**

Suzuki argues that this Court should require clear and convincing proof as the standard for punitive damages—an issue likely to recur on retrial.

■ In this case, the only instruction on burden of proof was the preponderance of the evidence standard, articulated in the general burden of proof instruction for regular civil claims. *See* Notes on Use, *MAI 5 th 3.01; Elam v. Alcolac, Inc.,* 765 S.W.2d 42, 224 (Mo.App.1988); *Kansas City v. Keene Corporation,* 855 S.W.2d 360, 377 (Mo. banc 1993) (Holstein, J., concurring); *MAI 3.01* (1964). In order to award punitive damages, the jury needed only to believe "more likely than not" the propositions of fact submitted

in the instruction on punitive damages. *See Wollen v. DePaul Health Center*, 828 S.W.2d 681, 685 (Mo. banc 1992). Preponderance is the minimum standard in civil disputes. *Santosky v. Kramer*, 455 U.S. 745, 755, 102 S.Ct. 1388, 1395, 71 L.Ed.2d 599 (1982). In *Menaugh v. Resler Optometry, Inc.*—with little discussion and citing no precedent—this Court rejected a higher standard of proof for punitive submissions, relying on "our normal requirements in the submission of civil cases." 799 S.W.2d 71, 75 (Mo. banc 1990).

■ The function of the standard of proof is to "allocate the risk of error between the litigants and to indicate the relative importance attached to the ultimate decision." *Addington v. Texas*, 441 U.S. 418, 423, 99 S.Ct. 1804, 1808, 60 L.Ed.2d 323, 329 (1979). The clear and convincing standard specifically is used

in civil cases involving allegations of fraud or some other quasi-criminal wrongdoing by the defendant. The interests at stake in those cases are deemed to be more substantial than mere loss of money and some jurisdictions accordingly reduce the risk to the defendant of having his reputa-

tion tarnished erroneously by increasing the plaintiff's burden of proof.

*Id.* Missouri already requires this higher standard of proof in several types of civil cases. *See Keene*, 855 S.W.2d at 377.

■ Punitive damages "are imposed for the purpose of punishment and deterrence." *State ex rel. Smith v. Greene*, 494 S.W.2d 55, 60 (Mo. banc 1973). *See also Menaugh*, 799 S.W.2d 71 at 76 (Robertson, J., concurring); *Keene*, 855 S.W.2d at 378. Punitive damages thus are like other cases requiring the clear and convincing standard of proof: the remedy is so extraordinary or harsh that it should be applied only sparingly. *Keene*, 855 S.W.2d at 378.

A growing majority of states requires clear and convincing evidence before punitive damages can be considered. *See Pacific Mutual Life Insurance v. Haslip*, 499 U.S. 1, 23 n. 11, 111 S.Ct. 1032, 1046 n. 11, 113 L.Ed.2d 1 n. 11 (1991). Twenty-four states have adopted a clear and convincing standard by statute.[1] Six states and the District of Columbia have adopted the standard by judicial decision.[2] One state does not allow punitive

---

[1]. Ala.Code § 6–11–20 (1996 Cum.Supp.); Alaska Stat. § 09.17.020 (1994 Cum. Supp); Cal. Civ. Code § 3294(a) (West 1996 Cum.Supp.); Ga. Code Ann. § 51–12–5.1 (Michie 1996 Cum. Supp.); Ill.Rev.Stat. ch. 735 § 5/2–1115.05(b) (West 1996 Cum.Supp.); Ind.Code Ann. § 34–4–34–2 (Burns 1996 Cum.Supp.); Iowa Code Ann. § 668A.1 (West 1987); Kan. Stat. Ann. § 60–3701(c) (1994); Ky.Rev.Stat. Ann. § 411.184(2) (Michie/Bobbs–Merrill 1992); Minn.Stat. § 549.20.1(a) (1994); Miss.Code Ann. § 11–1–65(1)(a) (1996 Cum.Supp.); Mont.Code Ann. § 27–1–221(5) (1996); Nev.Rev.Stat. § 42.005(1) (1995); N.J. Stat. Ann. 2A:15–5.12 (West 1996 Cum.Supp.); N.C. Gen.Stat. § 1D–15(b) (Michie 1995); N.D. Cent.Code § 32–03.2–11.1 (1996); Ohio Rev.Code Ann. § 2315.21(C)(3) (Baldwin's 1994); Okla. Stat. Ann. tit. 23, § 9.1 (West 1997 Cum.Supp.); Or.Rev.Stat. § 30.925 (1991); S.C.Code Ann. § 15–33–135 (Law Co-op.1995 Cum.Supp.); Texas Civ. Prac. & Rem.Code Ann. § 41.003(a) (West 1997 Cum.Supp.); Utah Code Ann. § 78–18–1(1)(a) (1992).

Florida limits punitive damages to three times the amount of compensatory damages, unless the claimant can prove more by clear and convincing evidence. Fla. Stat. Ann. § 768.73(1)(b) (West 1996 Cum.Supp.).

Colorado requires proof beyond a reasonable doubt to support a punitive damages claim. Colo.Rev.Stat. § 13–25–127(2) (1989).

South Dakota's statute requires the trial court to apply a clear and convincing standard to determine, before punitive damages can be submitted to the jury, whether there is a reasonable basis to believe that there has been willful, wanton or malicious conduct by the defendant. S.D. Codified Laws Ann. § 21–1–4.1 (1987). The Supreme Court of South Dakota held that this does not, by implication, require a jury to use a clear and convincing standard, rather than a preponderance of evidence standard, in determining whether to award punitive damages. *Flockhart v. Wyant*, 467 N.W.2d 473, 475 (S.D.1991).

[2]. *See Linthicum v. Nationwide Life Ins. Co.*, 150 Ariz. 326, 332, 723 P.2d 675, 681 (1986); *Masaki v. General Motors Corp.*, 71 Haw. 1, 780 P.2d 566, 575 (1989); *Tuttle v. Raymond*, 494 A.2d 1353, 1363 (Me.1985); *Owens–Illinois, Inc. v. Zenobia*, 325 Md. 420, 601 A.2d 633, 657 (1992); *Hodges v. S.C. Toof & Company*, 833 S.W.2d 896, 901 (Tenn.1992); *Wangen v. Ford Motor Co.*, 97 Wis.2d 260, 294 N.W.2d 437, 458 (1980); *Jonathan Woodner Co. v. Breeden*, 665 A.2d 929, 932 (D.C.App.1995). *But see Jessen v. National Excess Ins. Co.*, 108 N.M. 625, 776 P.2d 1244, 1248 (1989); *Jackson v. Consolidated Rail Corp.*, 223 N.J.Super. 467, 538 A.2d 1310, 1321 n. 5 (App. Div.1988); *Martin v. Johns–Manville Corp.*, 508 Pa. 154, 494 A.2d 1088, 1098 n. 14 (1985).

damages at all,[3] and two others do not in most civil cases.[4]

■ Because punitive damages are extraordinary and harsh, this Court concludes that a higher standard of proof is required: For common law punitive damage claims, the evidence must meet the clear and convincing standard of proof. To the extent of its discussion of the standard of proof for punitive damages, *Menaugh* is overruled.

■ This change in the common law relates to requirements at trial, which are procedural and apply prospectively only. *Barker v. St. Louis County*, 340 Mo. 986, 104 S.W.2d 371, 377–78 (1937). The clear and convincing standard of proof for punitive damages shall apply to this case, all cases in which trial begins after February 1, 1997, and all pending cases in which a proper objection has been preserved. *See Hartman by Hartman v. Hartman*, 821 S.W.2d 852, 858 (Mo. banc 1991); *Gustafson*, 661 S.W.2d at 15.

### III.

The judgment of the circuit court is reversed and the cause remanded for a new trial consistent with this opinion.

HOLSTEIN, C.J., PRICE, LIMBAUGH, ROBERTSON and COVINGTON, JJ., concur.

WHITE, J., dissents in separate opinion filed.

WHITE, Judge, dissenting.

I respectfully dissent. As to the nonparty witnesses, I cannot find that the trial court

abused its discretion by barring evidence of their alcohol consumption. The principal opinion decides that the trial court erred based on the general rule regarding alcohol consumption—that the number of drinks an eyewitness has consumed prior to the event is relevant to credibility. This rule does not mean that evidence of drinking automatically gets in, however. On the other hand, prejudicial evidence is not automatically excluded.[1] *Unfairly* prejudicial evidence, however, evidence that inherently has the tendency to induce a jury to decide an issue on an improper basis, can be excluded at the discretion of the trial court.[2]

The trial court has the best vantage point from which to evaluate unfair prejudice, and we can only reverse if there exists evidence that the trial court abused its discretion in making that evaluation.[3] This is a very difficult standard of review to overcome. The trial court's ruling will only be overturned if it is:

> clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration; if reasonable people can differ about the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion.[4]

It was logical for the trial court to exclude as unfairly prejudicial the evidence that several nonparties had consumed some wine the day of the accident and that one nonparty witness was feeling "tipsy." These nonparties had been in the company of the plaintiff

---

**3.** *See Miller v. Kingsley*, 194 Neb. 123, 230 N.W.2d 472, 474 (1975).

**4.** N.H.Rev.Stat. Ann. § 507:16 (1996); *Fisher Props., Inc. v. Arden–Mayfair, Inc.*, 106 Wash.2d 826, 726 P.2d 8, 23 (1986).

**1.** *See State v. Williams*, 652 S.W.2d 102, 113 (Mo. banc 1983). "The fact that such evidence might be prejudicial is not dispositive."

**2.** *See State v. Gibson*, 636 S.W.2d 956 (Mo. banc 1982). Although prejudice is not the dispositive issue, "due process does not require all relevant evidence to be received nor prohibit the refusal of highly prejudicial albeit relevant evidence." *Id.* at 958. *See, e.g., State v. Taylor*, 663 S.W.2d

235, 240 (Mo. banc 1984) (holding that expert's testimony was not sufficiently based on technique to overcome *inherent danger of prejudice* created by his status as an expert); *Gant v. Hanks*, 614 S.W.2d 740, 744 (Mo.App.1981) (holding that defendant's concern for plaintiff in personal injury action was not "so inflammatory or prejudicial as to amount to abuse of discretion").

**3.** *Gibson*, 636 S.W.2d at 958.

**4.** *Richardson v. State*, 863 S.W.2d 876, 881 (Mo. banc 1993).

and the defendant-driver. The plaintiff was a passenger in the defendant-driver's vehicle. The vehicle rolled over. The plaintiff sued the corporate defendants on the basis of product liability and the defendant-driver on the basis of negligence. The corporate defendants cross-claimed against the defendant-driver for negligent operation of the automobile and asserted the affirmative defense of contributory negligence against the plaintiff. Both the cross-claim and the defense were based on alcohol consumption. The evidence that the nonparties were drinking inherently has the danger of leading the jury to the conclusion that both the plaintiff and the defendant-driver had been drinking. By excluding this evidence the trial court was ensuring that the corporate defendants met their burden of establishing the negligence of the parties independent of evidence concerning activities of the nonparties. Considering the complete context in which this evidence was offered, the nuances of which only the trial court could truly discern, it does not shock the sense of justice that the trial court found these references to the drinking of the nonparty companions unfairly prejudicial to the plaintiff, as well as the defendant-driver, concerning the issue of negligence.

As to the party witnesses, I agree with the principal opinion that the *Doisy* standard of "erratic driving" or "other circumstances" proved difficult to apply in the courtroom. The intent of *Doisy* was legitimate, however. When there is evidence of alcohol consumption in any negligence case, it is not always admissible because of the unfairly prejudicial effect on the jury. *Doisy* attempted to emphasize this point. Following decisions treated *Doisy* as creating a new standard in automobile negligence cases. I agree with the principal opinion that a separate rule is not necessary and that the general rule on evi-

dence of alcohol consumption is sufficient. The general rule in conjunction with the discretion that the trial court has in determining whether evidence is unfairly prejudicial ensures adequate protection against the improper use of evidence of alcohol consumption.

I disagree, however, with reversing the case before us on the grounds that we are overruling *Doisy*. To apply a rule retroactively in this manner is clearly within our power,[5] but I would declare today's rule to operate prospectively only. Whether or not we announce the overruling of precedent prospectively only is a case-by-case analysis.[6] We have adopted a three-factor test to facilitate this analysis.[7]

First, the decision in question "must establish a new principle of law ... by overruling clear past precedent."[8] There is no question that this decision overrules *Doisy* to the extent that it created a separate standard for the admission of evidence of alcohol consumption in automobile negligence cases. "This Court therefore declares a new standard for parties in civil cases: Evidence of alcohol consumption is admissible, if otherwise relevant and material."[9]

The second factor is whether retroactive application will enhance or retard the purpose and effect of the new rule.[10] An overruling case is applied retroactively when it controls the legal outcome of circumstances occurring prior to the date of the decision.[11] Even though the decision concerning the effect of overruling precedent is ultimately case specific, a general trend has emerged concerning the purpose and effect of new rules. Rules with substantive purpose and effect are applied retroactively as well as prospectively.[12] Rules that are procedural are applied prospectively only.[13]

---

**5.** "[C]ourts of final decision may define and declare the effect of a decision, that is, whether or not it shall operate prospectively only." *Koebel v. Tieman Coal & Material Co.*, 337 Mo. 561, 85 S.W.2d 519, 524 (1935) (citing *Great Northern Railway Co. v. Sunburst Oil & Refining Co.*, 287 U.S. 358, 53 S.Ct. 145, 77 L.Ed. 360 (1932)).

**6.** *Sumners v. Sumners*, 701 S.W.2d 720, 723 (Mo. banc 1985).

**7.** *Id.* at 724.

**8.** *Id.*

**9.** *Op.* at 108.

**10.** *Sumners*, 701 S.W.2d at 724.

**11.** S.R. Shapiro, Annotation, *Overruling Decision—Application*, 10 A.L.R.3d 1371 (1966).

**12.** *See Sumners*, 701 S.W.2d at 725.

**13.** *Id. See also* this opinion. *Op.* at 110.

Substantive rules define the rights of parties, such as the elements of a cause of action or a defense.[14] Evidentiary rules are generally considered to be procedural, as they relate more to "the machinery for carrying on the suit." [15] Our decision today does not change the ability of parties to bring causes of action for negligence involving automobiles. Overruling *Doisy* does change the mechanics of the admission of evidence once parties are inside the courtroom, however. This case is clearly procedural. This factor militates in favor of announcing the new rule prospectively only.

The third factor requires a balancing of:

the interest of those who may be affected by the change in the law, weighing the degree to which parties may have relied upon the old rule and the hardship that might result to those parties from the retrospective operation of the new rule against the possible hardship to those parties who would be denied the benefit of the new rule.[16]

Both parties presented their cases at trial and on appeal relying on *Doisy*. Neither side expected that this Court would overturn *Doisy* after thirty years of reliance on the case. Neither side requested this Court to do so. The argument of the defendants in this case was that the evidence they offered at trial "amply satisfied" the *Doisy* standard. To reverse for a new trial because we are overruling *Doisy* is a windfall for the defendants, and one for which they did not argue.

The trial court made its decision in compliance with *Doisy* when it was the controlling law. If we reverse this case for the wrongful exclusion of evidence, we are holding that the trial court abused its discretion. It seems incongruous to admit how "inconsistent and unpredictable" the *Doisy* standard proved to be at trial, and then single out this trial court for the conclusion that it reached under *Doisy*. We also· cannot hold the trial court to the standard of foreseeing that we would

overturn thirty years of precedent. I would affirm the judgment of the trial court and announce the overruling of *Doisy* prospectively only.

As to the clear and convincing standard for punitive damages, I would again apply the new rule prospectively only. The principal opinion states that this change in common law "relates to requirements at trial, which are procedural and apply prospectively only." I agree. The principal opinion goes on, however, to apply the rule retroactively to this case and other pending cases. While it is within our power to announce a new rule in this manner, I do not feel it is appropriate to do so when the new rule is procedural and the trial court acted in accordance with the controlling law at the time.

---

**14.** *Shepherd v. Consumers Cooperative Association,* 384 S.W.2d 635, 640 (Mo. banc 1964).

