James M. STEWART and Julie
A. Stewart, Appellants,

v.

Gregory Scott CARRON, Respondent.

No. 68630.

Missouri Court of Appeals,
Eastern District,
Division Four.

Feb. 11, 1997.

Thomas L. Ray, Colson, Wagner & Ray, Farmington, for appellants.

Russell F. Watters, T. Michael Ward, Brown & James, P.C., St. Louis, for respondent.

SIMON, Judge.

James M. Stewart and Julie A. Stewart, plaintiffs, appeal from a jury verdict in favor of Gregory Carron, defendant, in their action for damages arising out of an automobile accident. In their petition, plaintiffs allege that defendant negligently operated his vehicle by crossing into James' lane of travel and colliding with him. Further, Julie sought damages for loss of consortium.

In their point on appeal, plaintiffs contend the trial court erred in limiting their "cross-examination of [defendant] about his consuming intoxicating liquor prior to the accident because [defendant] was the only testifying witness to the accident and the court's ruling deprived [plaintiffs] of [their] basic right to a fair trial by not allowing the jury to weigh [defendant's] testimony in light of his consumption of alcohol." In our original opinion we affirmed the judgment of the trial court due to the lack of evidence of erratic driving or other circumstances from which it might be inferred that defendant had an impaired physical condition at the time of the collision. The Supreme Court of Missouri granted plaintiffs' Application for Transfer and then ordered this case retransferred to the Missouri Court of Appeals, Eastern District, for reconsideration in light of its decision in *Kathryn Rodriguez v. Suzuki Motor Corp., f/k/a Suzuki Motor Company, Ltd., et. al.*, 936 S.W.2d 104 (Mo. banc 1996). We reverse and remand.

The record indicates that at 1:30 a.m. on a Thursday morning, James was alone in his Monte Carlo, driving northbound on Germania Road, a two lane road, in St. Francois County. Defendant was travelling south-

bound, alone in his Chevy Blazer. James' vehicle had just passed over a one-lane bridge. Subsequently, upon cresting a hill the two vehicles collided. James' vehicle came to rest in a ditch on the eastern edge of the road, facing in a northerly direction. Defendant's vehicle came to rest in a ditch on the western side of the road, facing southbound.

Defendant testified that he approached James' vehicle after the accident, saw that James was trapped in his vehicle, and then ran to a local farm house where he asked the occupants to call for an ambulance.

Approximately one hour after the accident, a Missouri State Highway Patrol Trooper (Trooper) arrived on the scene. He testified at trial, that he observed that the left front and left undercarriage of defendant's vehicle were damaged. He observed that James' vehicle had been smashed in and down into the road and suffered damage to its left front, left side, and driver's compartment.

Trooper testified that upon his arrival to the accident site, he made the following observations: (1) the road is just over 17 feet wide and each of the vehicles were approximately 6 feet wide; (2) leading from James' car, there was a fresh "gauge" made into the road, located approximately 3 feet from the eastern edge of the road and with a length of approximately 7 feet; and (3) there were no skid marks left at the scene of the accident. Trooper further testified that he was satisfied that "[defendant] was not under the influence of alcohol that in any way caused or created the accident."

The ambulance crew, who were dispatched to the accident site, noted in the emergency room records, that James was "plus five beers." At trial, a nurse who initially examined James at the hospital, testified that James had the odor of alcohol on his breath. A medical technologist at the hospital testified that he drew a blood sample from James and then performed a laboratory analysis of the specimen. James' blood alcohol content (BAC) at 3:30 a.m. was .117. At 4:10 a.m., James was taken by helicopter to Saint Louis University Hospital. Another nurse testified that at 5:20 a.m., James vomited and the emission had the odor of alcohol. The nurse

further testified from hospital records that at 5:15 a.m., James' BAC was .068.

During the pretrial conference, each party presented motions in limine seeking to exclude various items of evidence. Plaintiffs filed two motions in limine seeking to prohibit defendant from introducing any evidence of James' BAC at or about the time of the accident, its level at the hospital, and evidence of his treatments for alcohol use and depression. Plaintiffs argued that the evidence was inadmissible because there was no direct evidence that James was in any way negligent or in any way operated his vehicle in a "careless manner or was erratic or was on the wrong side of the road or was speeding." Defendant argued that there would be evidence of James' erratic driving presented and that his BAC of .117 constituted evidence of intoxication. The trial court denied plaintiffs' motions.

Defendant filed a multiple count motion in limine seeking to prohibit plaintiffs from asking any questions concerning defendant's whereabouts prior to the collision and consumption of four beers. Defendant argued that since there was no indication or testimony that he was in any way impaired or had alcohol on his breath or other signs of erratic driving, the evidence was inadmissible. Plaintiffs' strenuously argued to the court that:

> clearly, consumption of alcohol and where [defendant] was before the accident ... are clearly admissible, if not on the issue of impeachment, his ability to observe what he saw, what happened at the scene, ... his ability to observe, his ability to recall ... all are admissible even if he's had half of a beer.

The trial court sustained the motion reasoning that: "courts have not allowed evidence of simply drinking if it doesn't rise to the level of intoxication unless it's coupled with erratic driving."

At trial, during plaintiffs' case-in-chief, James testified that he had suffered severe injuries, including head trauma, as a result of the accident. He testified that he had no memory of the accident or events prior to the accident. The last thing James remembered

was leaving his place of employment approximately one-half hour prior to the accident. Throughout cross-examination, defendant elicited evidence of James' prior history of alcohol abuse and depression.

Plaintiffs also called Trooper to testify as to the call he received, the scene when he arrived, the position of the cars, the physical shape the vehicles were in and who was present. On cross-examination defense counsel asked Trooper multiple questions as to the physical appearance of defendant. He asked if Trooper smelled alcohol on defendant, if he did any field sobriety tests on defendant, or if he suspected alcohol consumption. Trooper stated that he could not remember specific details about defendant but that he was satisfied that "[he] was not under the influence of alcohol that in any way caused or created the accident."

During the course of trial, but outside the presence of the jury, plaintiffs asked the trial court to reconsider its prohibition of asking any questions of defendant concerning his use of alcohol prior to the accident for two reasons:

we feel there is evidence of erratic driving on the part of the [d]efendant and ... two, I feel that the [d]efense has waived their objections, if any, by offering testimony of [Trooper] as to the condition of the [d]efendant, his appearance, breath, eyes, and appearance at the scene.

Also outside the hearing of the jury, plaintiffs made their offer of proof regarding defendant's drinking:

Q. Prior to the accident had you been to the—been drinking any beer?

A. Yes, sir.

Q. Where were you drinking this beer?

A. Chateau De Ville.

Q. How many beers did you drink at the Chateau De Ville?

A. Just a few.

Q. What is your best estimate of that?

A. I would say four at the most.

Plaintiffs' request was denied.

During defendant's case-in-chief, he testified as follows:

Q. Now, when you were driving up that evening just tell us what you remember occurring as you're driving towards the accident scene, let's say, the last hundred yards. Describe what happened.

A. The most I remember as I was going in, coming around the curve and I was just coming out of that dip, getting ready to come over the top of the hill, and when I popped over the top of that hill, I just remember headlights, seeing the headlights and knowing that they was coming towards me. And I just braced myself. I hung onto the steering wheel, braced myself, and that's the last I remember. The next thing I remember I kind of woke up. I was in the ditch. I don't know how long the period was between the impact and when I came to.

Q. Were you able to hit the brake with your foot before the impact took place?

A. Yes.

Q. Do you know where the other car was; in other words, can you tell us where on the roadway it was?

A. No I can't.

Q. All you remember is seeing headlights coming towards you?

A. Yes.

Q. Where was your vehicle on the road?

A. I was on the right hand side of the road.

Q. If we drew a center stripe down the middle of the road, was your vehicle to the right of that center stripe?

A. Yes.

The cause was submitted on comparative fault and the jury returned its verdict assessing zero percent fault to each party and found that Julia Stewart did not sustain damage as a direct result of injury to James.

■ In their point on appeal, plaintiffs essentially contend that the trial court erred in refusing to allow them to impeach defendant's testimony because when he was on the stand testifying, as the only witness to what had occurred, evidence of his drinking is

admissible for the specific purpose of impeaching his testimony regarding his ability to observe his surroundings at the time of the accident.

Our Supreme Court, in *Rodriguez*, considered evidence of alcohol consumption and its effect on the impeachment of non-party witnesses and the negligence/comparative negligence of the parties. *Rodriguez*, 936 S.W.2d at 106. For non-parties, the Court found that evidence of alcohol consumption is relevant and material to the witness' ability to see, hear, perceive and observe. *Id.* at 106. In addition, the Court stated that evidence of alcohol consumption is admissible by cross-examination or by independent testimony and that any possible impairment of a witness' ability to recall is relevant to his credibility. *Id.* Further, the Court found that the trial court had erred in barring evidence of alcohol consumption by the non-party witness because defendant's offer of proof indicated that several witnesses admitted drinking wine before the accident and one of the passengers admitted feeling "tipsy." *Id.*

Previously, for parties in a negligence action, evidence of a driver's alcohol consumption was admissible only if coupled with evidence of erratic driving or some other circumstance from which it might be inferred that the driver's physical condition was impaired at the time of the accident. *Rodriguez*, 936 S.W.2d at 106; *See* Doisy v. Edwards, 398 S.W.2d 846, 849–50[3] (Mo. banc 1966). The apparent rationale was that evidence of drinking could "prejudicially and improperly inflame the jury's sentiments." *Rodriguez*, 936 S.W.2d at 106.

In examining *Doisy* and its progeny, our Supreme Court found that *Doisy*'s logic made more sense under a system of contributory negligence because under that system liability was essentially, "all or nothing." *Rodriguez*, 936 S.W.2d at 107. However, in 1983, Missouri adopted a comprehensive system of comparative fault which is based upon the principles of fairness and is more "equitable and just." *Id.* The Court found that a comparative fault system can better accommodate alcohol evidence than a contributory negligence system and that a jury should be as fully informed as possible in order to determine the relative fault of the parties. *Id.* Because of the change in Missouri's system distributing fault and the inconsistencies and unpredictability in applying the *Doisy* criteria, the Supreme Court expressly overruled *Doisy* stating that the standard set forth in *Doisy* "was no standard at all." *Id.* at 108.

■ The Court set forth a new standard for parties in civil cases. Now, evidence of alcohol consumption is admissible, if otherwise relevant and material. *Rodriguez*, 936 S.W.2d at 108. Evidence of erratic driving is no longer required to permit evidence of alcohol consumption. This standard applies in two situations: first, when the proponent does not allege intoxication as an independent act of negligence, the evidence of drinking may be part of the proof of other negligent acts alleged; and second, when intoxication is alleged as an independent act of negligence. *Id.* at 108–09.

The Court went further to address possible concerns about the prejudicial effect of the evidence. The Court found that the prejudicial concerns may be countered by requesting limiting instructions to emphasize the purpose of the evidence. *Id.* Moreover, parties may voir dire potential jurors about views on alcohol consumption or counsel can place the parties' alcohol consumption in limited context for the jury during examination of witnesses. *Id.*

Here, the trial court's rationale in sustaining the motion to exclude the evidence of alcohol consumption by defendant was that "courts have not allowed evidence of simply drinking if it doesn't rise to the level of intoxication unless it is coupled with erratic driving." As we have learned from *Rodriguez*, evidence of erratic driving is no longer required.

Therefore, in this particular factual situation, the issue is whether defendant's consumption of alcohol prior to the accident is relevant and material so that it may be used in the cross-examination of defendant. The Supreme Court stated that "a jury should be as fully informed as possible in order to determine the relative fault of the parties."

*Rodriguez,* 936 S.W.2d at 107. Evidence of defendant's consumption of alcohol prior to the accident bears on his ability to see, hear, perceive and observe his surroundings and would enable a jury to be more fully informed in order to determine the relative fault of the parties. Here, it is especially relevant in the present case where defendant is the only witness who can testify to what had occurred prior to and during the incident. Because the *Doisy* requirements are no longer applicable and the information is relevant and material, we reverse and remand for a new trial.

Judgment reversed and remanded.

PUDLOWSKI, P.J., and HOFF, J., concur.